In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2077

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STACEY MILLER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01 CR 71—**Barbara B. Crabb,** *Chief Judge.*

ARGUED FEBRUARY 12, 2003—DECIDED MAY 1, 2003

Before BAUER, POSNER, and RIPPLE, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury convicted Defendant Stacey Miller on two counts of distributing five grams of cocaine base, and the district court sentenced him to 400 months' imprisonment, followed by eight years of supervised release. The district court granted two continuances prior to trial and appointed backup counsel for Miller, because his attorney was suffering from serious health problems. Miller appeals the district court's decision not to grant a third continuance when his lead counsel was hospitalized two days before trial and his backup counsel felt unprepared to try the case alone. For the reasons set forth below, we affirm.

## BACKGROUND

In May 2001, police initiated a series of undercover buys from Mark Winfield, a suspected drug dealer in Madison, Wisconsin, as part of an ongoing investigation. On May 7, undercover officer Bernard Gonzalez encountered Miller in Winfield's apartment, where Gonzalez purchased a quantity of crack cocaine from Winfield. Gonzalez did not know Miller at that time. On May 10, Gonzalez again contacted Winfield to arrange another purchase of crack cocaine at Winfield's apartment. Winfield told Gonzalez to go to the apartment, where Winfield's "guy" was waiting to sell the drugs to Gonzalez. When Gonzalez arrived, Miller was present again and this time Miller sold the drugs to Gonzalez. Detectives subsequently showed Gonzalez several photos of Miller, and he identified Miller as the man in the apartment on May 7 and May 10.

Officer Gonzalez arranged two more buys from Winfield and Miller on the afternoon of May 10, both of which were conducted by, or in the presence of, Miller in Winfield's apartment. Both men were subsequently arrested and indicted for various drug-related charges. In particular, the government charged Miller with two counts of distributing more than five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1), to which Miller pleaded not guilty. The district court appointed attorney James Cooley to represent Miller. Winfield pleaded guilty prior to trial and is not directly involved in this appeal.

The district court scheduled Miller's trial for November 19, 2001, but on that morning, Cooley informed the court that he was unable to proceed due to health problems. Cooley, who suffers from clinical depression, requested a continuance of two weeks in order to recover and be prepared for trial. The district court granted the continuance immediately and set the trial over until December 10, 2001. One week before December 10, however, Cooley moved the

court for a further continuance to December 17, due to his continued health problems. In that motion, Cooley noted that attorney Krista Ralston, a colleague of Cooley's, had been brought in on the case and would be able to take over if Cooley was still too ill on December 17. The motion indicated that Miller had been fully informed about Cooley's illness and that he wished to proceed as the motion proposed instead of acquiring new counsel. Finally, the motion noted that Ralston could not proceed until the week of January 14, 2002.

Rather than grant only a one week continuance, the district court entered an order on December 4, 2001, resetting the trial for January 28, 2002, and appointing Ralston as backup counsel. The court noted, specifically, that there was no real assurance Cooley would be able to proceed on December 17 and that a longer continuance would accommodate the possibility that Ralston would need to take over as substitute counsel. The district court also noted that Ralston needed time to adequately prepare for Miller's defense. The court gave Cooley until December 7 to reply as to whether the January 28, 2002, trial date was acceptable, and he responded affirmatively.

Between mid-December 2001 and January 26, 2002, Ralston checked with Cooley on a daily basis as to how he was proceeding on Miller's case. Because Ralston believed Cooley's health was again normal, she did not actively prepare to take over as lead counsel. The two attorneys, however, planned to spend the weekend prior to Miller's trial completing preparations and meeting with Miller in jail. Ralston did meet with Miller at the jail for approximately two hours on Saturday, January 26, 2002, but Cooley did not appear. Ralston learned very late that evening that Cooley had been found unconscious in his car that morning and had been hospitalized.

Ralston spent much of that night with Cooley's wife at the hospital but was unable to speak with Cooley, until a

very brief conversation some time on Sunday. Cooley had been intubated and heavily medicated, making any substantive conversation impossible. Ralston contacted the prosecution to explain the situation, and the government provided Ralston with a list of its witnesses, explained each witnesses' role in the case, and explained the testimony the government expected to obtain from each witness at trial. The government's witness list totaled seven people: 1) Gonzalez, the undercover officer who bought the drugs from Miller; 2) Winfield, Miller's former codefendant, who described their ongoing drug relationship and Miller's role on May 10; 3) two phone company representatives presenting records of Miller's and Winfield's cell phone calls; 4) Miller's probation officer; 5) the case detective who took custody of the drugs and transported them to the crime lab; and 6) the chemist who determined the drugs constituted cocaine base.

On the morning of trial, Ralston explained Cooley's hospitalization to the court, informed the court that she was unprepared to try the case alone, and requested another continuance. The government did not object. The district court, however, denied the continuance, noting the history of the case, the prior continuances granted due to Cooley's health, and the district court's understanding that Ralston was supposed to have been working with Cooley to prepare for trial precisely because Cooley's health was suspect. The court also pointed to the fact that a second jury pool had come to the courthouse, a jury had been selected, and both parties' witnesses were present and ready for a short trial.

As a result, the trial was conducted on January 28 & 29, 2002. The government presented six of its seven witnesses on January 28 and the seventh witness, plus a brief rebuttal witness, on January 29. Miller presented three witnesses on the morning of January 29 as well, and the case concluded before the lunch hour that day. Dur-

ing the trial, the district court prohibited Ralston from calling three alibi witnesses because neither she nor Cooley had included their names on the Notice of Alibi, as required by Federal Rule of Criminal Procedure 12.1(a). Cooley had filed an appropriate alibi notice, naming Robert Morgan and Carleton Higgins as alibi witnesses, but had only sent the prosecution a letter mentioning the three, additional witnesses. While Morgan testified that he saw Miller in Chicago on May 10, 2001, Higgins was reportedly on his way to the trial but failed to show up and, thus, did not testify on Miller's behalf. The jury did hear testimony, however, from two government witnesses regarding statements Miller made that indicated he planned to provide false alibi witnesses.

The jury deliberated for a few hours that afternoon and returned a guilty verdict on both counts. The district court subsequently sentenced Miller to 400 months in prison, followed by eight years of supervised release. Miller now appeals the district court's denial of a third continuance on January 28, 2002. Miller also raised an ineffective assistance of counsel claim on his direct appeal, but chose wisely, at oral argument, to reserve that claim for a § 2255 petition. Our decision, therefore, is limited only to his claim that the district court abused its discretion by not granting the requested continuance.

## ANALYSIS

We review the district court's denial of a continuance only for an abuse of discretion and a showing of actual prejudice. *United States v. Avery*, 208 F.3d 597, 601 (7th Cir. 2000); *United States v. Schwensow*, 151 F.3d 650, 656 (7th Cir. 1998). While adherence to a trial date once set is a worthy goal, myopic insistence on proceeding when faced with a valid request for a continuance is not appropriate. *United States v. Farr*, 297 F.3d 651, 655 (7th Cir. 2002).

We have developed, therefore, several factors to determine whether a further continuance is justified: 1) the amount of time available for preparation; 2) the likelihood of prejudice from denial of the continuance; 3) the defendant's role in shortening the effective preparation time; 4) the degree of complexity of the case; 5) the availability of discovery from the prosecution; 6) the likelihood a continuance would have satisfied the movant's needs; and 7) the inconvenience and burden to the district court and its pending case load. *Id.*; *Schwensow*, 151 F.3d at 656. These factors deserve varying weight and can best be judged by the district court at the time the defendant requests the continuance. *Farr*, 297 F.3d at 655.

### 1. *The amount of time available for preparation*

Taking the first factor, we find that Ralston had enough time to prepare adequately to take over this case because she was directed to do so by the district court's December 4, 2001, order. When the district court continued the case for a second time, from December 10, 2001, to January 28, 2002, it specifically noted that there were no guarantees Cooley would be able to proceed in January because of his health problems. The court, therefore, appointed Ralston as backup counsel with the specific intention and instruction that she be ready to proceed in the event Cooley could not. In fact, it was Cooley's own motion that suggested Ralston serve as backup counsel, with Miller's knowledge and consent. The district court even continued the case beyond the date the motion indicated Ralston would become available, January 14, 2002.

That Cooley appeared healthy up until the weekend before trial did not relieve Ralston of her responsibility to prepare for trial. Clearly, she recognized that responsibility to some degree because she and Cooley planned to meet with Miller the weekend before trial in order to put

the finishing touches on their trial preparation. While the exact nature of Cooley's health problem on January 26, 2002, may not have been expected, the fact that his health was susceptible was not unexpected. We find, therefore, that Ralston had enough time to prepare adequately to try the case alone.

### 2. *The likelihood of prejudice from denial of a continuance*

The second factor requires us to examine the likelihood of prejudice to Miller from denial of the continuance. Under this factor, Miller's first argument is that the denial prejudiced his presentation of an effective alibi defense. Prior to trial, Cooley gave the prosecution notice that Carleton Higgins and Robert Morgan were going to testify as alibi witnesses. Cooley did not include any other names on the formal Notice of Alibi, but Miller asserts that three, additional witnesses were available to support his alibi. The district court prohibited their testimony, however, because their names were not included on the Notice of Alibi as required by Federal Rule of Criminal Procedure 12.1(a). FED. R. CRIM. P. 12.1(a) (2003).

Miller argues that, if given a continuance, Ralston could have corrected that procedural error and presented the additional witnesses, creating a reasonable probability of a different outcome at trial. What Miller fails to establish, however, is that these witnesses would have provided admissible testimony. *See generally United States ex rel. Searcy v. Greer*, 768 F.2d 906, 913 (7th Cir. 1985) (noting requirement that defendant demonstrate that potential alibi witness would provide "substantial favorable evidence" to establish that denial of a continuance due to unavailability of witness amounts to an abuse of discretion). Ralston made no offer of proof before the district court when these witnesses were excluded, and we cannot

assume their testimony would have been admissible or even favorable to Miller. Additionally, the jury heard testimony from more than one government witness regarding Miller's intention to produce false alibi witnesses. We, therefore, find it unlikely that additional alibi witnesses would have produced a different result in Miller's trial.

Of the two, properly noticed alibi witnesses, only Robert Morgan appeared to testify. Higgins was reportedly on his way but did not appear before the trial concluded. Miller asserts that a continuance would have allowed Ralston to develop a relationship with Higgins and make his appearance at trial a guarantee. Miller does not assert that anything Ralston or Cooley did, however, prohibited Higgins' appearance at trial. He cannot claim, therefore, that the denial of a continuance prejudiced him in this regard. The district court, certainly, is not required to continue a trial simply because a voluntary alibi witness fails to appear on time.

Miller's second argument is that the denial of the continuance prejudiced his opposition to the government's case. Specifically, he points to Ralston's failure to object to testimony from Officer Gonzalez and Winfield about Miller's activities and drug relationship with Winfield prior to May 10, 2001. Miller would like us to consider that testimony inadmissible Rule 404(b) evidence under the Federal Rules of Evidence.

Rule 404(b) prohibits "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b) (2003). We have held, however, that under the inextricably intertwined doctrine, testimony relating to the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of "other acts" within the meaning of Rule 404(b). *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002). So long

as testimony concerning those acts is not unfairly prejudicial under Rule 403, it may be admitted.[1] *Id.* Further,

> [a]cts satisfy the inextricably intertwined doctrine if they complete the story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime.

*Id.*

It is clear that the testimony from Officer Gonzalez and Winfield relating to Miller's activities prior to May 10, 2001, is inextricably intertwined with the circumstances of Miller's arrest and indicted activity. The testimony of both witnesses set out the ongoing drug relationship between Winfield and Miller, including Miller's activity on the days immediately surrounding the May 10, 2001, sales to Officer Gonzalez. Because admission of this background testimony was not unfairly prejudicial to Miller, no Rule 403 violation occurred, and the testimony was not Rule 404(b) evidence. A continuance would not have given Ralston time to find a way to exclude that evidence under Rule 404(b), and therefore, the district court's denial was not prejudicial to Miller in this regard.

Miller next points to Ralston's poor cross-examination of Winfield in the hopes of establishing prejudice by the denial of a continuance. Miller argues that a continuance would have allowed Ralston to better prepare her cross-examination and become more familiar with the details

---

[1] Rule 403 provides for the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403 (2003).

of the case. Because she was not given more time, Miller asserts, the district court is to blame for the manner in which Ralston's cross-examination prejudiced his case. Ralston, however, performed a credible cross-examination of Winfield and pointed out his shortcomings to the jury. In particular, she established that he had prior felony convictions; that he had a bias to testify against Miller because he accepted a plea agreement for the possibility of a reduced sentence; that his testimony lacked truthfulness because he had read all of the case reports prior to testifying; and that he made prior inconsistent statements before trial. *See United States v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996) (noting the acceptable methods of attacking a witness' credibility).

Miller's final argument concerning prejudice is that Ralston was simply unfamiliar with the facts of his case and that a continuance would have given her more time to become familiar. Presumably, more time might have benefitted Ralston, but the district court's denial of the continuance can hardly be considered prejudicial to Miller in this sense. As we said above, it was Ralston's obligation to prepare for trial starting in early December 2001. She had nearly two months to do so, and her failure to prepare sooner is not attributable to the district court. Ralston's greater familiarity with the details of Miller's case likely would have made the trial run more smoothly, but we do not believe that it would have brought about a different result. Accordingly, we do not find that the denial of a continuance prejudiced Miller so as to render the district court's decision an abuse of discretion.

### 3. *Miller's role in shortening the preparation time*

The third factor requires us to examine whether Miller had any role in decreasing the amount of preparation time for Ralston. It appears that Miller did nothing to hinder his

attorneys' preparations in this case; Ralston's failure to prepare sooner is attributable solely to her. The defense urges us to give this factor great weight, arguing that Miller must now pay for the errors of his attorneys. We do not find Miller's argument persuasive on this factor, especially in light of the lack of prejudice he suffered from the denial of a continuance. Effectively, the continuance would have provided little difference in the outcome.

### 4. & 5. *Complexity of the case & Availability of discovery from the prosecution*

The fourth and fifth factors involve the complexity of the case and the availability of discovery from the prosecution, respectively. Again, these factors cut in favor of the district court's decision. This case was not as complex as Miller would have this Court believe. He faced only two charges of drug distribution involving sales to an undercover police officer. The prosecution called only seven witnesses, five of whom presented brief, relatively unrebuttable testimony. The government's two main witnesses were the undercover officer (Gonzalez) who bought the drugs from Miller and Miller's former co-defendant (Winfield) who testified about their long-term drug relationship.

In fact, the prosecution discussed thoroughly with Ralston the nature of its case and the role of each witness after learning of Cooley's hospitalization on January 26. Further, Miller does not assert that Cooley was denied access to discovery prior to his hospitalization. Miller's attorneys, therefore, had ample access to discovery from the government throughout trial preparations, and Ralston, specifically, had access to that information from early December 2001 through late January 2002. As a result, the fourth and fifth factors substantiate the district court's decision as well.

### 6. *The likelihood a continuance would satisfy Miller's needs*

Sixth, and similar to the prejudice analysis, there is little likelihood that a continuance would have satisfied Miller's or Ralston's need for more time. As with nearly every case, there is always something an attorney could have better prepared or handled. That fact, however, does not necessarily mean that a continuance would have satisfied Miller's needs. Miller's primary complaint is that the denial of a continuance deprived him of an opportunity to call additional alibi witnesses. We answered this issue above, and we continue to find that additional alibi witnesses would not have produced a different result.

### 7. *The inconvenience and burden to the district court's docket*

Finally, the inconvenience of postponing this trial for a third time weighs in favor of the district court's decision. While the weight of this factor may be minimal, Miller certainly cannot claim that a continuance would not have inconvenienced the district court, the prosecution, the jury members, and the related witnesses. Combined with the factors discussed above, therefore, it is apparent that the district court's decision did not amount to an abuse of discretion.

Accordingly, we AFFIRM the decision of the district court to deny Miller's request for a third continuance.

A true Copy:

      Teste:

                                    ————————————————————

                                    *Clerk of the United States Court of Appeals for the Seventh Circuit*