In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3320

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MAURICE CROWDER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:06-cr-00102-2—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED SEPTEMBER 24, 2009—DECIDED DECEMBER 7, 2009

Before BAUER, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Police arrested Maurice Crowder after finding cocaine and marijuana in a hidden compartment of a car that Crowder and a co-defendant shipped from Arizona to Illinois. Crowder was indicted for conspiracy and attempted possession, both in violation of 21 U.S.C. § 846. Following a bench trial, the district court found Crowder guilty as charged and sentenced him to 240 months' imprisonment on each count, to run concur-

rently. Crowder appeals his conviction and sentence, alleging numerous missteps below. Because we find that the district court committed no reversible error, we affirm the conviction and sentence.

## I. BACKGROUND

Maurice Crowder traveled back and forth between Chicago and Tucson, Arizona, with Charome Watkins[1] in January 2006. The men transported a dog from Tucson to Chicago on January 23. The men traveled back to Tucson the next day, allegedly to pick up additional dogs. Police stopped the men in the Dallas/Fort-Worth Airport and conducted a consensual interview, but later allowed them to leave after a drug-sniffing dog did not alert on the $46,000 in cash that Crowder was carrying.

Three days later, title to a 1998 Ford Mustang was transferred to Watkins's mother, Vickie Watkins,[2] who lived in Harvey, Illinois, with her son. That same day, a woman arranged to have the driver of a car carrier pick up the Mustang and transport it from Tucson to Harvey. The driver arrived at the designated meeting place, followed shortly thereafter by two unidentified Hispanic

---

[1] Watkins was indicted together with Crowder. He pled guilty to conspiracy in exchange for a reduced sentence. Watkins was murdered five days before Crowder was to go on trial in August 2007.

[2] In his supplemental motion to suppress, Crowder said that he purchased the Mustang as a gift for Ms. Watkins.

men, one driving the Mustang and the other a pickup truck. The driver checked the Mustang for damage prior to loading it onto the carrier, filled out the bill of lading, and gave the pink carbon-copy to the man who dropped off the Mustang. The men left the area before the driver loaded the Mustang, which the driver considered unusual because it was his experience that most people stayed to watch the driver load their vehicles onto the carrier.

While en route to Harvey, the driver contacted the Missouri Highway Patrol to report his suspicions about a Grand Prix that he was transporting. He met the highway patrol at a scale house, where he unloaded the Grand Prix and gave the patrol permission to search it. Using a K-9 unit, the patrol eventually discovered drugs hidden in secret compartments in the Grand Prix. The patrol then asked the driver if he was suspicious of any other vehicle on his carrier. The driver identified the Mustang based on his earlier observations. For example, while inspecting and loading the Mustang, the driver had noted a number of unusual things about the interior of the Mustang: one of the seats did not work, it smelled like spices, there were several air fresheners, and there were no personal items in the vehicle. The body of the Mustang was also missing the fender wells, trim items, hood scoops, Mustang horse emblem, and rubber molding around the lights. The driver also had opened the trunk after the individual dropping off the Mustang told him that there was a speaker box in the trunk. The driver agreed to unload the Mustang from the top row of the truck to facilitate the patrol's search of the car.

The patrol made a number of observations from the outside of the Mustang, including that the backseat appeared to have been tampered with and there was an interior screw sitting loose on the backseat. The patrol then opened and searched the Mustang[3] where they discovered eighty pounds of marijuana and approximately two kilograms of cocaine hidden in a secret compartment behind the backseat.

The driver agreed to participate with law enforcement officers in a controlled delivery of the Mustang. The driver called the phone number of the intended recipient of the Mustang and spoke with Watkins. The driver told Watkins that he had been delayed but was still on his way. The next day the driver again spoke with Watkins to arrange a time and place for delivering the Mustang. A police officer recorded the phone conversations between the driver and Watkins.

Police set up surveillance at the delivery site and filmed the controlled delivery. The driver was also wearing audio recording equipment. Crowder and Watkins arrived in a maroon Ford Taurus, with Crowder

---

[3] The government originally argued below that the patrol did not search the vehicle until a drug-detecting dog alerted on the Mustang; however, it was later revealed that the K-9 unit had already left the area before the patrol searched the Mustang. The district court reiterated in its order denying Crowder's motion for a new trial that the absence of the dog sniff would not have altered the district court's denial of Crowder's motion to suppress or the court's finding that Crowder was guilty as charged. (App. at 19.)

driving. Both men got out of the Taurus, leaving the doors open and the engine running. Crowder handed Watkins cash to pay the driver for the delivery. The men told the driver that they did not have any form of identification, but Crowder told the driver that they had received the paperwork directly from the men that shipped the car from Arizona. Crowder gave the driver the pink bill of lading that the driver had given the unidentified Hispanic men in Arizona. The driver gave Watkins the white bill of lading after Watkins signed for the Mustang, and Watkins then handed the white bill of lading to Crowder. The men then left the delivery site, with Watkins driving the Mustang and Crowder the Taurus. Both men were arrested shortly thereafter.

A grand jury charged Crowder with conspiracy (Count I) and attempted possession with intent to distribute (Count II), both in violation of 21 U.S.C. § 846. Crowder moved to suppress evidence of the drugs found in the Mustang, based in part on his argument that the search violated the Fourth Amendment. The district court denied Crowder's motion to suppress.

The day before the trial was to begin, the government orally communicated to Crowder's counsel a large amount of new information that had not been disclosed previously to Crowder, including transcripts of the phone calls between Watkins and the driver.[4] The government indicated its preference to the district court

---

[4] Crowder does not argue on appeal that these late disclosures constituted a *Brady* violation. (Reply at 14.)

that Crowder's counsel have time to review the evidence once it had been reduced to writing. The court asked Crowder's counsel what the evidence was, apparently in an effort to determine whether a continuance was required or justified. Defense counsel indicated that he was uncomfortable sharing with the judge the contents of the new information because Crowder intended to waive his right to a jury trial and defend himself in a bench trial. The district court eventually denied Crowder's motion for continuance and started the trial later that same day. Following a three-day bench trial, the district court found that Crowder was guilty as charged in the indictment.

After denying Crowder's motion for a new trial, the district court entered judgment against Crowder for conspiracy and possession with intent to distribute (not attempted possession, as charged in the indictment). At sentencing, the government urged that Crowder's offense level include an enhancement for being a career offender under section 4B1.1A of the Sentencing Guidelines. The district court eventually sentenced Crowder to 240 months' imprisonment on each count, to run concurrently, a term of imprisonment that falls above the guideline range without any enhancements (130 to 162 months) but below the range if all of the proposed enhancements were included (360 months to life).

Crowder filed a timely appeal, challenging both his conviction and sentence. We find no error below and therefore affirm.

**II. ANALYSIS**

On appeal, Crowder argues that (1) the district court should have suppressed the evidence from the search of the Mustang; (2) the district court should have granted the motion for continuance; (3) his conviction on Count II should be reversed because the indictment was constructively amended; (4) he cannot be sentenced for both conspiracy to possess and attempted possession arising out of the same statute; (5) the evidence was insufficient to support his conviction; and (6) his prior crimes should not have triggered the career offender enhancement.

*A. Fourth Amendment*

Crowder argues that the police search of the Mustang violated his Fourth Amendment rights, and that the district court therefore erred when it denied his motion to suppress the contents of the search. We review the district court's factual findings for clear error, but review legal conclusions *de novo*. *United States v. Mosby*, 541 F.3d 764, 767 (7th Cir. 2008).

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A government agent's search is unreasonable when it infringes on "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). To challenge a search the defendant must show that he had both a subjective and objective expectation of privacy in the item or location searched.

*United States v. Haywood*, 324 F.3d 514, 515-16 (7th Cir. 2003) (*citing United States v. Walker*, 237 F.3d 845, 849 (7th Cir. 2001)). A court usually excludes evidence obtained in violation of the Fourth Amendment. *Mosby*, 541 F.3d at 767. *But see Herring v. United States,* 19 S. Ct. 695, 700 (2009) ("The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies. Indeed, exclusion has always been our last resort, not our first impulse . . . ." (citation and quotation omitted)).

The district court found that Crowder lacked standing[5] to challenge the search of the Mustang because

---

[5] Crowder makes much of the district court's and the government's reference to his "standing" to challenge the search. (Reply at 2.) Crowder is correct that the Supreme Court rejected the use of traditional standing doctrines in assessing the scope of Fourth Amendment rights. *Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978). But it is clear from the district court's order and the government's argument that their use of the word "standing" was incidental to their proper discussion of Crowder's subjective and objective expectation of privacy in the Mustang. Indeed, although our court has explicitly recognized the Supreme Court's move away from standing doctrines in *Rakas*, *see United States v. Brack*, 188 F.3d 748, 755 n.2 (7th Cir. 1999), we have continued to use the word "standing" in the context of Fourth Amendment rights as shorthand to refer to a defendant's ability to challenge a search or seizure based on a reasonable expectation of privacy in the property. *See, e.g., United States v. Marrocco*, 578 F.3d 627, 632 n.4 (7th Cir. 2009)

(continued...)

he did not have a reasonable expectation of privacy in the Mustang. The court also found that the search did not violate the Fourth Amendment. *United States v. Crowder*, No. 06 CR 102-2, 2007 WL 1424606, at *4-5 (N.D. Ill. May 10, 2007). On appeal, Crowder focuses his challenge on the district court's finding that he "relinquished control of the Mustang to a third party shipping company" and thereby effectively waived his Fourth Amendment protections. *See id.*

We agree with the district court's conclusion that Crowder did not have a reasonable expectation of privacy in the Mustang after he turned it over to the shipper.[6]

---

[5] (...continued)
("[The Defendant] may establish that he has standing to challenge the search and detention of the briefcase, provided he can show that he held a legitimate expectation of privacy in the briefcase."); *United States v. Ellis*, 499 F.3d 686, 689 (7th Cir. 2007) ("[The defendant] had a legitimate expectation of privacy in his home and therefore he has standing to challenge the search of the home.").

[6] That the drugs were hidden in a secret compartment in the car clearly evinces Crowder's subjective desire that the drugs not be discovered. But Crowder must also show that his expectation of privacy was objectively reasonable—the simple act of hiding something will not necessarily trigger Fourth Amendment protections. *See, e.g.*, *United States v. Young*, 350 F.3d 1302, 1307-08 (11th Cir. 2003) ("As [the defendant] and his cohorts sealed the money in closed containers they undoubtedly were trying to hide the contents from the
(continued...)

The doors were left unlocked, the driver of the car carrier was given the keys, and Crowder knew that the driver would enter the Mustang and drive it. We conclude that no one could have a reasonable expectation of privacy in the contents of a vehicle under those circumstances. Although there is no evidence that Crowder directly authorized the driver to search the vehicle, in light of the circumstances described above it is clear that the driver was "authorized to act in direct contravention to" Crowder's privacy interest. *See United States v. Young*, 350 F.3d 1302, 1308 (11th Cir. 2003) (holding that the defendant did not have a reasonable expectation of privacy in a package sent via Federal Express when the defendant signed an air bill that gave Federal Express the authority to search the package).

Crowder argues that *United States v. Villarreal*, 963 F.2d 770 (5th Cir. 1992), compels a different outcome. In *Villarreal*, the defendants shipped drugs in sealed 55-gallon containers. The shipper notified customs officials after becoming suspicious of the contents of the drums. Without first obtaining a warrant, customs agents opened the drums and discovered the drugs. The court found that the defendants had a reasonable expectation of privacy in the sealed drums and that the agents'

---

[6] (...continued)

world. They certainly had a subjective expectation (or hope) of privacy. Second, we question whether this subjective expectation is one that society is prepared to recognize as reasonable. We think not." (internal quotation marks omitted)).

search of the drums violated the defendants' Fourth Amendment rights. *Id.* at 774-75.

Crowder's reliance on *Villarreal* is misplaced. The court in *Villarreal* consistently referenced a reasonable expectation of privacy in "closed containers." *See, e.g.*, *id.* at 773-74 ("Individuals do not surrender their expectations of privacy in closed containers when they send them by mail or common carrier." (*citing Jacobsen*, 466 U.S. at 114 (recognizing a reasonable expectation of privacy in "[l]etters and other sealed packages"))); *id.* at 774 ("The drum opened by the customs agents in this case was a closed container sent by common carrier in which the sender and addressee had a reasonable expectation of privacy."). The Mustang at issue in this case can hardly be considered a "closed container" analogous to the sealed drums in *Villarreal*. The doors to the Mustang were unlocked, the driver had the keys, and Crowder knew that the driver would be opening the doors and driving the car. The reasoning in *Villarreal* is therefore inapposite to Crowder's case.

Because Crowder lacked a reasonable expectation of privacy in the Mustang, he does not have standing to challenge the search of the car and subsequent seizure of the drugs that were hidden inside. Consequently, Crowder's appeal based on the Fourth Amendment must fail.

We also agree with the district court that, even if Crowder had standing to challenge the search, the search complied with the requirements of the Fourth Amendment. The district court found that the driver of

the car carrier consented to the police search of the Mustang. "[P]olice may reasonably search without a warrant when a person with authority voluntarily consents to the search, though a lack of apparent authority would invalidate the search." *Mosby*, 541 F.3d at 767 (*citing United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008)); *see also United States v. Grap*, 403 F.3d 439, 443 (7th Cir. 2005) (*citing Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000)). Here, the record supports the district court's finding that the driver consented to the search. After being asked if there were any other suspicious vehicles on the truck, the driver communicated his well-founded suspicion of the Mustang. The driver then removed the Mustang from the car carrier to facilitate the police's search of the car. The district court's finding that the driver consented to the search was not clearly erroneous.

The driver's consent, however, is only relevant if he had apparent authority[7] to waive the protections afforded by the Fourth Amendment. *See Mosby*, 541 F.3d at 767. A third party has apparent authority when it "would appear to a reasonable person, given the information that law enforcement possessed," that the individual had

---

[7] Crowder argues that the driver himself did not have authority to search the vehicle, much less to allow police to search the vehicle. Because the driver needed only apparent authority to effectively consent to the police search of the Mustang, *see Mosby*, 541 F.3d at 767; *Grap*, 403 F.3d at 443, we may assume without deciding that the driver did not have actual authority.

"common authority over the property . . . ." *United States v. James*, 571 F.3d 707, 714 (7th Cir. 2009) (*citing Basinski*, 226 F.3d at 834). The district court found that "Crowder relinquished complete control of the vehicle which contained the controlled substances to the driver of the trailer, as per the terms of the lading contract," and that "[t]he driver had complete control and full access to the Mustang when it was shipped to Illinois." (App. at 9.) The district court's implicit finding that the driver had authority to consent to the search of the Mustang is not clearly erroneous. As discussed previously, the Mustang was left unlocked, the driver of the car carrier had the key, and the driver was required to drive the car to unload it from the carrier. A reasonable person would conclude, based on the amount of control over the Mustang that the driver of the carrier exercised, that the driver had authority to consent to the police search of the car. Accordingly, even if Crowder had standing to challenge the search, his Fourth Amendment challenge to the search would fail.

*B. Motion for Continuance*

Crowder also argues that the district court erred by denying his motion for a continuance after the government disclosed voluminous amounts of new evidence shortly before trial. We review the district court's denial of a continuance for abuse of discretion and a showing of actual prejudice. *United States v. Miller*, 327 F.3d 598, 601 (7th Cir. 2003). A court should consider several factors

when ruling upon a motion for continuance, including, but not limited to:

> (1) the amount of time available for preparation; (2) the likelihood of prejudice from denial of the continuance; (3) the defendant's role in shortening the effective preparation time; (4) the degree of complexity of the case; (5) the availability of discovery from the prosecution; (6) the likelihood a continuance would have satisfied the movant's needs; and (7) the inconvenience and burden to the district court and its pending case load.

*Id.* The district court need not make "a rigid recitation and analysis of each point before a continuance may be denied," and the court may place varying degrees of importance on each factor, depending on the circumstances of the case. *United States v. Williams*, 576 F.3d 385, 389 (7th Cir. 2009). The party requesting the continuance should identify the specific risk of prejudice, because a court may properly deny a motion to continue that is based wholly on "vague and conclusory" statements. *See United States v. Robbins*, 197 F.3d 829, 846 (7th Cir. 1999).

Crowder argues that the district court denied his motion for a continuance solely to preclude him from filing additional motions that would further delay the proceedings. But even a cursory review of the record reveals that although the district court did consider the prospect of additional motions, it also considered the relevant *Miller* factors and ultimately decided to deny the motion for a continuance based largely on Crowder's counsel's unwillingness to state with any amount of

specificity the prejudice that might result to his client absent a continuance. (App. at 55-56.) Given Crowder's counsel's cryptic discussion of the prejudice that would befall his client absent a continuance, the district court would have had a difficult time assessing both the likelihood of prejudice and the likelihood that a continuance would cure that prejudice. The district court did explicitly consider the complexity of the case (App. at 58) and the inconvenience to the court (App. at 58, 59), and determined that those factors weighed against granting the continuance.

To be sure, the district court *could* have determined that a continuance was prudent in light of the timing of the disclosures, the lack of time available for Crowder to consider the new materials, and the likelihood that a continuance would have alleviated Crowder's concern about inadequate time to prepare. But because we review the district court's decision for an abuse of discretion, we cannot say that the district court erred in denying Crowder's motion for a continuance.

Crowder's appeal on this issue also fails because no actual prejudice resulted from the district court denying the continuance. *See Miller*, 327 F.3d at 601. The government did not introduce into evidence substantial portions of the information that was disclosed so close to trial, including evidence of Crowder's post-arrest inculpatory statements and conduct. The only specific prejudice that Crowder has identified is insufficient time to prepare his cross-examination of the driver regarding the recorded telephone calls between the driver and Watkins. More generally, Crowder argues that

more time to review the documents "may have allowed defense counsel to interview and consult additional witnesses . . . ." (Appellant's Brief at 30.) We have been reluctant to assign error to the denial of a continuance where the defendant failed to specify what new defense or additional questions he could have raised had the continuance been granted. *See United States v. Vincent*, 416 F.3d 593, 599 (7th Cir. 2005) ("Despite ample time since trial, however, [the defendant] has neither pointed to exculpatory evidence he would have found in the discovery nor proposed additional questions he would have asked the government's witnesses."); *Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988) ("[D]efense counsel had and exercised the opportunity to cross-examine [the witness] fully; and to this day there is no suggestion of what defense against his testimony [the defendant's] counsel might have developed if given a continuance."). Although Crowder is not required to produce new evidence to show prejudice, *Williams*, 576 F.3d at 391, he cannot rely on vague and conclusory statements about his abstract need for more time to review the evidence. Because he cannot show that he suffered actual prejudice from the district court's denial of a continuance, Crowder's appeal on this issue is denied.

## C. *Constructive Amendment*

Crowder was indicted for conspiracy and attempted possession. (App. at 29-30.) But when the district court entered judgment against Crowder, it listed the second count of conviction as possession with the intent to dis-

tribute, rather than attempted possession. (*Id.* at 24-28.) Although neither party moved to correct the judgment or commitment order below, Crowder now argues that the error constitutes a constructive amendment of the indictment and therefore warrants reversal of the conviction. Because Crowder forfeited this argument below, we review for plain error. *United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008). To show plain error, the challenger must show that "(1) an error has occurred, (2) it was 'plain,' (3) it affected a substantial right of the defendant, and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gibson*, 356 F.3d 761, 765-66 (7th Cir. 2004) (internal quotation marks omitted).

"A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir. 1998) (internal quotation marks omitted). Because a constructive amendment violates the Fifth Amendment, *see United States v. Baker*, 227 F.3d 955, 960 (7th Cir. 2000), a conviction under an amended indictment should almost always be reversed. *See Cusimano*, 148 F.3d at 828 n.3.

The government argues that the appearance of possession with intent in the judgement is simply a clerical error that does not run afoul of the Fifth Amendment. As the government concedes (Appellee's Resp. at 46), the judg-

ment contains an error—it erroneously lists possession with intent as Count II, rather than attempted possession. However, we agree that it was not plain error because it did not affect a substantial right of the defendant and it does not negatively affect the integrity of the proceedings below. Additionally, a correction pursuant to Rule 36 of the Federal Rules of Criminal Procedure can adequately resolve the error in the judgment.

Crowder has highlighted a few occasions, in the course of the entire trial and sentencing, when the government referred to actual possession rather than attempted possession. In this regard, we find the government's actions readily distinguishable from the conduct found to constitute a constructive amendment in *United States v. Combs*, 369 F.3d 925, 935 (6th Cir. 2004), which Crowder cited for support. The court and parties in *Combs* continuously mixed and matched the elements from two different crimes in the indictment and jury instructions and throughout the proceedings, leading to what the court called a "hopelessly jumbled mess" that warranted reversal. *Id.* at 933-34 (internal quotation marks omitted). Our review of the record in this case reveals that both the parties involved in the trial and the district court understood that Crowder was indicted for attempted possession, and there is nothing about the proof provided at trial or the comments made by the government that warrants reversal of the conviction on Count II. Accordingly, Crowder's appeal on this issue is denied.

*D.  Conspiracy and Attempt*

Crowder argues that the district court erred by sentencing him for both conspiracy and attempt because doing so punishes him twice for the same criminal undertaking. Because Crowder failed to raise this argument with the district court, we review the district court's imposition of the sentence for plain error. *LeShore*, 543 F.3d at 939. Our review of the district court's legal conclusions is *de novo*. *United States v. Henton*, 374 F.3d 467, 469 (7th Cir. 2004).

Both the conspiracy charge and the attempted possession charge arise under 21 U.S.C. § 846, which provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Crowder does not dispute that a defendant may be charged with and convicted for both conspiracy and attempt under § 846. *United States v. Carrera*, 250 F. App'x 731, 733 (7th Cir. 2007) ("[I]t has long been settled that a prosecution for both conspiracy and attempt does not violate the Double Jeopardy Clause because each crime requires proof of a fact that the other does not."). However, we have not had occasion to consider whether imposing separate sentences for conspiracy and attempt improperly punishes a defendant twice for the same criminal conduct.

Crowder urges us to follow the Ninth Circuit and hold that a defendant cannot be sentenced for both conspiracy and attempt under § 846 if the charges arise out

of a single criminal act. In *United States v. Touw*, the Ninth Circuit held that, although a defendant could be charged and convicted of both conspiracy and attempt, the court could only sentence him on one count if the underlying criminal activity constituted a "single course of action." 769 F.2d 571, 574 (9th Cir. 1985); *see also United States v. Palafox*, 764 F.2d 558, 560 (9th Cir. 1985). But the three circuits to consider this issue after *Touw* have unanimously rejected the Ninth Circuit's "single course of action" inquiry, choosing instead to apply the Supreme Court's *Blockburger* test at the sentencing stage to determine whether separate sentences are appropriate. *See United States v. Boykins*, 966 F.2d 1240, 1245 (8th Cir. 1992); *United States v. Barrett*, 933 F.2d 355, 360-61 (6th Cir. 1991); *United States v. Savaiano*, 843 F.2d 1280, 1293 (10th Cir. 1988). Under *Blockburger*—which answered the question of whether a single act could constitute multiple crimes under different statutes—a court must determine "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Conspiracy and attempt are clearly separate offenses under this inquiry: conspiracy requires an agreement with another person, whereas attempt may be completed alone. *See United States v. Corson*, 579 F.3d 804, 810 (7th Cir. 2009) (noting that conspiracy requires an agreement); *United States v. Gladish*, 536 F.3d 646, 648 (7th Cir. 2008) (noting that attempt requires only intent to complete the crime and a substantial step toward completion).

We agree with the Sixth, Eighth, and Tenth Circuits and now hold that the *Blockburger* test should be applied

at the sentencing phase to determine whether separate sentences are appropriate for the crimes charged and convicted, even where those crimes arise out of a single criminal act. The *Blockburger* test is easily administered and does not lend itself to a fact-specific inquiry that inevitably will lead to unnecessary appeals and leave parties and courts "without hope of much guidance." *Savaiano*, 843 F.2d at 1293. Furthermore, district courts retain their discretion at sentencing to address situations where sentencing on both counts may effect an excessive or otherwise inappropriate sentence. Because we find that a defendant may be sentenced for both conspiracy and attempt, Crowder's appeal on this issue is denied.

We find Crowder's remaining claims without merit and therefore decline to discuss them.

## III. CONCLUSION

Maurice Crowder's conviction and sentence are AFFIRMED.