In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2791

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CATHARINE L. MILLER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:08-cr-30252-GPM-CJP-1—**G. Patrick Murphy**, *Judge.*

ARGUED JANUARY 11, 2010—DECIDED APRIL 13, 2010

Before EASTERBROOK, *Chief Judge*, and KANNE, *Circuit Judge,* and KENNELLY, *District Judge*.[1]

KENNELLY, *District Judge*. Catharine Miller pled guilty to one count of traveling in interstate commerce to engage in prohibited sexual conduct with a fourteen-year-

---

[1] Judge Matthew F. Kennelly of the United States District Court for the Northern District of Illinois is sitting by designation.

old girl in violation of 18 U.S.C. § 2423(b). At her sentencing hearing, the district court overruled Miller's objections to the presentence report and adopted the report's recommended Guidelines sentencing range of seventy to eighty-seven months. The government argued for a sentence above the Guidelines range. The court sentenced Miller to a 120-month prison term. Miller has appealed her sentence. We vacate the sentence and remand for resentencing.

## I. BACKGROUND

Miller is thirty-three years old and holds an undergraduate degree in engineering, a graduate degree in engineering science, and a graduate certificate in religious studies. She was living in Cincinnati, Ohio when, in July 2008, she initiated an on-line conversation on an Internet forum with a K.H., a fourteen-year-old girl from a town in southern Illinois. Within weeks, they began communicating via telephone and e-mail. Miller and K.H. discussed sex on at least ten occasions and exchanged comments such as "I miss you" and "I love you so much." K.H. sent Miller sexually explicit photographs of herself and told Miller of her sexual encounters with other females. On October 29, 2008, K.H. informed Miller that she was fourteen years old. K.H. also told law enforcement that she knew Miller was thirty-three years old.

Eventually, K.H. informed Miller that she wanted to break up because she wanted to begin a relationship with someone who lived closer to her. Miller later told

law enforcement that this prompted her to visit K.H. In November 2008, Miller drove from Ohio to Illinois. She met K.H. in a park and, shortly thereafter, proposed marriage and gave K.H. a ring. Miller had already spent three days and one night with K.H. when, on November 17, 2008, K.H.'s stepfather discovered them together in the back of Miller's vehicle at a local park.

On December 2, 2008, a federal grand jury returned a one-count indictment charging Miller with traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b). On March 25, 2009, Miller pled guilty to the charge.

In the presentence report, the probation office recommended that the court impose an enhancement to the Sentencing Guidelines offense level for unduly influencing a minor to engage in prohibited sexual conduct. *See* U.S.S.G. § 2G1.3(b)(2)(B). After taking into account this and other enhancements and a reduction for acceptance of responsibility, the probation office recommended an advisory Guidelines range of seventy to eighty-seven months' imprisonment. The probation office also noted that it had not identified any factors that would warrant a departure from the Guidelines range.

At the sentencing hearing, Miller objected to the "undue influence" enhancement. She presented evidence that the victim had stated that she had been sexually active with both male and female partners. The district court overruled the objection and applied the enhancement. It found, consistent with the presentence report, that the

advisory Guidelines range was seventy to eighty-seven months.

The government argued for a sentence above the advisory range. In support, it offered evidence that Miller had a prior relationship with another minor—a photo album that had been seized from Miller's home. Miller's counsel objected. He said that he had not previously seen the evidence and that it had not been brought to his attention by the government during the pendency of the case. He argued that the defense "should have an opportunity to see that evidence before it's put before the Court. And we've not been afforded that opportunity here." July 13, 2009 Tr. 17. The district judge asked what counsel would have done differently if he had the evidence earlier. Counsel replied, "I'd have an opportunity to confer with my client and look into what information is actually represented." *Id.* 18. The judge then announced, "[W]e will take a five-minute recess." *Id.* Following the recess, the judge asked if counsel wanted to say anything further. Counsel replied, "No. I'm just thankful for the opportunity, your Honor." *Id.* 19.

Counsel then presented arguments regarding the appropriate sentence. The prosecutor said that the materials in the photo album reflected that Miller had a relationship with a high school-aged minor in 2004-2005. He argued that Miller would be a danger to other young girls when she got out of prison and that the court should impose a significant prison term to incapacitate her. The prosecutor started to say that while in prison,

Miller could get counseling. The judge interrupted, saying that "[t]he recidivism rate of child sexual abusers is—it's massive. . . . Nothing seems to work." *Id.* 23. Defense counsel argued that a seventy-month sentence was sufficient, noting that Miller had no prior encounters with the criminal justice system. Counsel also noted that the court had the authority to put Miller on supervised release for the rest of her life and that there were mechanisms that would result in her being monitored closely.

The court reviewed the factors it was considering in imposing sentence. It found the circumstances of the crime to be aggravated given the difference in age between Miller and her victim and the fact that Miller was highly educated and intelligent and had not acted out of ignorance. The court also discussed the severely injurious effect of the crime on the victim and the difficulty she likely would have in recovering. On the issue of deterrence, the court said, "[D]eterrence just doesn't seem to have the effect that we wish that it would" but that it had nonetheless taken this factor into account. *Id.* 27-28. The court stated that it considered the need to protect the public from Miller to be "what this case comes down to." *Id.* 28. It stated that "the issue here is the protection of the public" and noted that "because of her intelligence and training, [the defendant] is particularly dangerous." *Id.* 29. The court imposed a 120-month prison term, followed by a lifetime period of supervised release, including conditions that Miller undergo sex offender treatment and that her home and computers would be subject to searches.

## II. Discussion

Miller appeals her sentence on three grounds. She argues that the district court erred in imposing the undue influence enhancement; by failing to give her and her counsel an adequate opportunity to consider the photo album offered by the government at the sentencing hearing; and by imposing an unreasonably high sentence without adequate justification. We consider each argument in turn.

### A. Undue influence enhancement

Miller argues that the district judge erred when he applied the enhancement for unduly influencing a minor pursuant to U.S.S.G. § 2G1.3(b)(2)(B). We review a district court's legal interpretation of a Guidelines enhancement *de novo* and its factual findings for clear error. *United States v. Patterson*, 576 F.3d 431, 442 (7th Cir. 2009).

Miller agrees that a rebuttable presumption of undue influence applies under the Guideline because she was at least ten years older than the minor victim. *See* U.S.S.G. § 2G1.3(b)(2)(B), app. note 3(B). She argues, however, that she rebutted the presumption and that the district court erroneously concluded that the evidence she offered was insufficient as a matter of law.

To attempt to rebut the presumption of undue influence, Miller offered evidence that K.H. had told the authorities that she had multiple sexual experiences with male and female partners and had sought out such encounters. Miller also pointed to evidence that she said showed K.H. had taken the initiative at various points during their

relationship. She argues that the district court determined that this evidence did not matter, relying on the court's statement that "as a matter of law, the fact that this child was sexually active is quite beside the point. [. . .] It doesn't go to what the defendant was doing." July 13, 2009 Tr. 11. According to Miller, the district court ignored our admonition that the commentary to U.S.S.G. § 2G1.3(b)(2)(B) "requir[es] a court to closely consider the voluntariness of the victim's behavior." *United States v. Mitchell*, 353 F.3d 552, 561 (7th Cir. 2003).

We disagree. The record reflects that despite the passing comment Miller cites, the district court in fact considered "the effect [of the defendant's conduct] on the victim," as *Mitchell* requires. *Id.* at 562. The court did not simply stop after making the comment quoted earlier. Rather, it asked whether "there [was] any evidence that would rebut the presumption here?" July 13, 2009 Tr. 11. The government argued that there was a significant difference between Miller and her victim in terms of knowledge and "the ability to manipulate [and] the ability to groom." *Id.* 12. It pointed to a sample of fifty e-mails in which Miller had repeatedly told K.H., whom she knew to be depressed or suicidal, that she loved her. The government argued that these comments "would have a profound effect on a 14 year old . . . that somebody is saying all these things to me and validates my worth, not as a teenager but as an adult, as an equal, and that is the influence." *Id.* The government also noted that material seized from Miller's home indicated that she was studying to be a guidance counselor, which gave her an even greater capability to exercise undue influence.

After hearing the arguments by counsel, the district court concluded that the presumption of undue influence

> hasn't been rebutted and that's all that's required under the guidelines. In other words, . . . the defendant hasn't shown whatever it would be that would have to be shown that the ten-year differential here didn't play a factor. And I think that I clearly recognized on the record that there might absolutely be such a case, but the Court couldn't envision it. That's two different things. But it certainly doesn't exist here.

July 13, 2009 Tr. 14-15. In short, the district court acknowledged that the presumption of undue influence was rebuttable and concluded, based on the evidence presented, that Miller had failed to rebut it. The court did not commit legal error nor, given the evidence presented, was its finding of undue influence clearly erroneous.

### B.  Admission of surprise evidence

Miller argues that the district court erred by considering the photo album without giving her a meaningful chance to consider and respond to the evidence. She relies on *Irizarry v. United States*, 128 S. Ct. 2198 (2008), in which the Supreme Court said that

> [s]ound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the [sentencing] hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues. We recognize that there will be some cases in which the factual basis for a particular sentence will

> come as a surprise to a defendant or the Government. The . . . appropriate response is . . . for a district judge to consider granting a continuance when a party has a legitimate basis for claiming that the surprise was prejudicial.

*Id.* at 2203. *See also United States v. Betts*, 576 F.3d 738, 744 (7th Cir. 2009) (courts are "generally prohibited from relying on undisclosed evidence [at sentencing] as this deprives the parties of the opportunity to rebut or respond to the evidence.").

Miller has forfeited this argument. Though one might question, in the abstract, whether a five-minute continuance was sufficient, her counsel did not suggest after that continuance that the defense needed more time. To the contrary, defense counsel thanked the court for the opportunity to confer with Miller, indicating that he was prepared to proceed.

For this reason, we review only for plain error. *See United States v. Lemmons*, 230 F.3d 263, 267 (7th Cir. 2000). Miller has failed to show that the district court's consideration of the photo album's contents impaired her substantial rights. She does not argue that the evidence was inaccurate, unreliable, or could have been rebutted, nor does she explain what she would have done differently if given a continuance or a longer recess. Because an "abstract need for more time to review the evidence"—which is all Miller argues—is insufficient to show actual prejudice, *see United States v. Crowder*, 588 F.3d 929, 937 (7th Cir. 2009) (denial of trial continuance), she is not entitled to a new sentencing hearing on this basis.

**C.  Reasonableness of the sentence**

The district court imposed a sentence that was fifty percent above the high end of the advisory Guidelines range. Miller argues that the sentence is unreasonable and was based on the district court's unsupported (and, she argues, erroneous) assumption that recidivism for sex offenders is "massive" and that there is no way to prevent a sex offender from re-offending. We review the substantive reasonableness of the sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

When a judge sentences a defendant outside the advisory Guidelines range, "he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance. . . . [A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50; *United States v. Presbitero*, 569 F.3d 691, 707 (7th Cir. 2009). The judge must give a justification that explains and supports the magnitude of the variance. *United States v. Eubanks*, 593 F.3d 645, 656 (7th Cir. 2010).

There is no question that Miller committed a very serious crime under aggravating circumstances and that she caused significant harm to her victim. The record reflects, however, that the court based its above-Guidelines sentence at least partly on its belief that sex offenders have a higher-than-normal rate of recidivism, specific deterrence does not work for them, and as a result, lengthy incapacitation is the only way to protect the public. Those factors, assuming their accuracy, would apply to all sex offenders, not just Miller. "An above-

guidelines sentence is more likely to be reasonable if it is based on factors [that are] sufficiently particularized to the individual circumstances of the case rather than factors common to offenders with like crimes." *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008) (internal quotation marks and citations omitted).

Just as importantly, neither party presented evidence that supported the district court's views about recidivism and deterrence of sex offenders, nor did the court provide any support for them. As Miller has argued on appeal, the court's comments about the rate of recidivism may be contrary to studies we have previously cited. *See United States v. McIlrath*, 512 F.3d 421, 424 (7th Cir. 2008) (citing R. Karl Hanson & Kelly E. Morton-Bourgon, "The Characteristics of Persistent Sexual Offenders: A Meta-Analysis of Recidivism Studies," 73 J. Counseling & Clinical Psych. 1154 (2005)). And another study by one of the same authors, which Miller also cites, suggests that the recidivism rate for female sex offenders is even lower. *See* Franca Cortoni & R. Karl Hanson, "A Review of the Recidivism Rates of Adult Female Sexual Offenders" (May 2005), *available at* http://www.csc-scc.gc.ca/text/rsrch/reports/r169/r169_e.pdf (last visited Apr. 8, 2010). In addition, the United States Department of Justice has reported that sex offender treatment programs can be effective under appropriate circumstances to reduce, to some extent, the potential for recidivism. *See* Center for Sex Offender Management, U.S. Dept. of Justice, "Myths and Facts About Sex Offenders" (Aug. 2000), *available at* http://csom.org/pubs/mythsfacts.html (last visited Apr. 8, 2010).

We do not intend by citing these studies to endorse their accuracy. And there may be reasons why, even if accurate, they do not apply to Miller's case. Our point is that the district court's comments about the likelihood of recidivism and the inefficacy of sex offender treatment, though perhaps consistent with commonly held views, are subject to debate. Given the absence of support in the record for the court's views, and for the other reasons we have cited, we conclude that the court failed to provide sufficient support for a sentence that was fifty percent above the high end of the advisory Guidelines range. "[A] sentencing judge should support an above-guidelines sentence with compelling justifications." *United States v. Gooden*, 564 F.3d 887, 890-91 (7th Cir. 2009) (internal quotation marks and citation omitted). As a result, we conclude the sentence was unreasonable.

### III. CONCLUSION

For the foregoing reasons, we vacate Miller's sentence and remand her case to the district court for resentencing. We express no view on what a proper sentence would be.