In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3402

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ABEL COVARRUBIAS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cr-00081-TWP-DKL-1 — **Tanya Walton Pratt**, *Judge.*

ARGUED JANUARY 24, 2017 — DECIDED FEBRUARY 3, 2017

Before BAUER, EASTERBROOK, and KANNE, Circuit Judges.

PER CURIAM. Abel Covarrubias was convicted by a jury of possessing with intent to distribute 50 grams or more of methamphetamine, and conspiring to commit this crime. On appeal he challenges the denial of his motion to suppress drugs found in a car being delivered to him from across the country. We affirm the judgment because the district court

correctly decided that Covarrubias lacked standing to contest the admission of the drugs into evidence.

A New Mexico State Police patrolman stopped a car hauler on a New Mexico highway because a digit on the car hauler's license plate was unreadable. During the stop the officer noticed that a Saturn Vue, secured on a trailer attached to the car hauler's truck, lacked a license plate and asked to see the car's paperwork. (The Saturn, which is the subject at the center of this suit, was being delivered to Covarrubias.) The bill of lading (the contract for this car's shipment) showed that the car was being shipped from an individual in California to someone named Juan Pablo in Indianapolis; the document listed the same phone number for both parties. The document also gave the car hauler the authority to drive the vehicle "on and off the [car hauler's trailer], or to and from the [trailer] at the pickup or delivery site." Further, the officer saw a stack of air fresheners in the car's air conditioning vents and after checking the car's vehicle identification number, determined that the car was not owned by the shipper or receiver.

The officer became suspicious that this car might be trafficking drugs and received permission from the car hauler, who had a car key, to search the locked vehicle. The officer found 46 pounds of methamphetamine in a hidden compartment below the console between the driver's and front passenger's seats. A conversation ensued, and the car hauler agreed to participate in a controlled delivery of the car that agents of the Department of Homeland Security and Indiana State Police officers would supervise.

The car hauler delivered the car to the Indianapolis delivery address on the bill of lading and unloaded the car from the trailer. At this point, Covarrubias entered the picture. He arrived at the shipping address, paid the car hauler for the delivery, and drove the car away. Shortly thereafter, police arrested him.

Covarrubias declined an interpreter, waived his *Miranda* rights in writing, and proceeded to make several admissions. He acknowledged that he paid the car hauler for delivering the car and represented himself as "Juan Pablo" to the car hauler. And he admitted knowing that the car contained methamphetamine and that he was being paid $2,000 to pick up the car and deliver it to an associate.

The government charged Covarrubias with possessing with intent to distribute 50 grams or more of methamphetamine and conspiring to commit this crime. *See* 21 U.S.C. §§ 841(a)(1), 846. Covarrubias moved to suppress the drugs, contending that the search violated his reasonable expectation of privacy in the car. He argued that the terms of the bill of lading deprived the car hauler of authority to consent to the officer's search and therefore the drugs found during the search should not be admitted into evidence. The district court conducted an evidentiary hearing and then denied Covarrubias's motion to suppress. The court concluded that he lacked standing to argue that this evidence should be suppressed because he did not have either a subjective or objective expectation of privacy in the vehicle. He had "no apparent ownership or possessory right in the vehicle, as either the shipper or receiver" and "no expectation of privacy in the Saturn Vue after it was turned over to the shipping company," which had a key to the car and

permission to drive the car on and off the trailer. In concluding that Covarrubias had no expectation of privacy in the car, Judge Pratt relied on this court's holding in *United States v. Crowder*, 588 F.3d 929 (7th Cir. 2009)—a case involving "nearly identical" facts, according to the judge—that parties have no reasonable expectation of privacy for a car given to a shipping company. *Crowder*, 588 F.3d at 934–35. Even if Covarrubias had standing to object to the search, the court went on to say, it was reasonable for the officer to believe that the car hauler had apparent authority to consent to a search because he had keys to the vehicle and authorization (as reflected in the bill of lading) to drive the car on and off the trailer.

A jury found Covarrubias guilty of the two charges, and he was sentenced to 225 months' imprisonment and five years' supervised release.

On appeal Covarrubias challenges the district court's standing analysis and maintains that he had a legitimate expectation of privacy in the car. He contends that the drugs' concealment below the car's center console gave him a subjective expectation of privacy. And he asserts that the bill of lading's restriction on the car hauler's authority, limited to taking the car on and off the trailer, gave him an objective expectation of privacy. He tries to distinguish his case from *Crowder*, which, he says, presents materially different facts. In *Crowder*, unlike his case, he asserts, the doors on the car being shipped were unlocked and the bill of lading did not limit the car hauler's authority to taking the car on and off the trailer.

The district court properly concluded that Covarrubias did not have a legitimate expectation of privacy in the car because

he did not own the car, had never been inside it, and did not control the car's contents. *See Rakas v. Illinois*, 439 U.S. 128, 134, 143 & n.12 (1978). Moreover, this case, as the district court observed, mirrors *Crowder* in legally relevant ways: the car hauler received keys to a car being shipped cross-country and permission to drive the car on and off the trailer. *Crowder*, 588 F.3d at 934–35. Even though the car's doors were locked, Covarrubias lacked a reasonable expectation of privacy because the car hauler controlled and had access to the car. Further, Covarrubias is incorrect that different terms in the bill of lading distinguish *Crowder*. In both cases the car haulers' control over the cars, stemming from the bills of lading, empowered them "to act in direct contravention" of the defendants' "privacy interests." *Id.* at 935 (internal quotation marks and citation omitted).

Covarrubias also asserts that he did not knowingly waive his *Miranda* rights because he did not understand the contents of the *Miranda* waiver document, which was written in English. Based on this contention, he urges the suppression of his statements to law enforcement that he acted as a middleman for the drugs and that he had identified himself as Juan Pablo. The district court found that these statements supported the conclusion that he did not have standing because they showed that he lacked an ownership interest in the car.

Covarrubias's argument is irrelevant because he did not have any expectation of privacy in the car once the car hauler received it. *See Crowder*, 588 F.3d at 934. In any event his post-*Miranda* statements to law enforcement are admissible because substantial evidence demonstrates that he understands and speaks English: five law enforcement officers and a paramedic

testified that he understands and speaks English, he declined an interpreter when he was arrested, and he sent text messages from his cell phone in English.

The judgment of the district court is AFFIRMED.