# Illinois Official Reports

## Appellate Court

---

### *People v. Ortega*, 2020 IL App (1st) 162516

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RUDOLPH ORTEGA, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>No. 1-16-2516 |
| Filed | April 10, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-20996; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Remanded with instructions; jurisdiction retained. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and James S. Young, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Leslie D. Gool, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion.<br>Presiding Justice Hoffman concurred in the judgment and opinion.<br>Justice Rochford specially concurred, with opinion. |

**OPINION**

¶ 1        Following a bench trial, defendant Rudolph Ortega was convicted of possession of over 5000 grams of cannabis and sentenced to four years in prison. On appeal, he contends that he received ineffective assistance of trial counsel. Specifically, he argues that counsel was ineffective for (1) failing to present evidence regarding certain disputed facts at the hearing on his motion to quash the search warrant of the vehicle in which police found the cannabis and (2) failing to provide affidavits in support of the defense motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a motion that also asked the court to quash the search warrant of the vehicle. For the reasons that follow, we remand for a *Franks* evidentiary hearing.

¶ 2                                    I. BACKGROUND
¶ 3        The record reveals the following essential facts. On November 2, 2014, a truck driver transporting a BMW automobile from Nevada to Chicago stopped in Naperville to unload a different vehicle from the truck. When the truck driver attempted to drive the BMW off the truck to accommodate the other vehicle, the driver discovered the BMW's battery was dead. The driver looked in the trunk, found multiple bundles wrapped in duct tape, and contacted the local police. The Naperville police obtained two search warrants: one to search the BMW and ascertain the contents of the packages in the trunk, and the other to place a tracking device on the BMW to monitor its location. At some point, the packages field-tested positive for cannabis. When the BMW arrived in Chicago, the truck driver followed his prearranged instructions and called a phone number to determine the precise delivery location. Defendant, codefendant Marcella Acosta, and codefendant Lilian Masso met the truck driver at a Home Depot parking lot in Chicago.[1] Defendant then drove the BMW to Masso's house and parked it in the detached garage. While the garage door was open, police observed defendant moving packages from the trunk of the BMW into a bag held by Acosta. Police entered the garage and detained defendant and Acosta. The packages tested positive for 5113.8 grams of cannabis. Following this arrest, defendant, Acosta, and Masso were charged by indictment with possession of over 5000 grams of cannabis with intent to deliver.

¶ 4        Defendant filed several pretrial motions, two of which are relevant to this appeal: (1) a "Motion to Quash Search Warrant #17998 and Suppress Evidence Illegally Obtained" and (2) a "Motion for *Franks* Hearing to Quash Search Warrant #14M402 and Suppress Evidence Illegally Obtained." Despite the titles of the two motions identifying different search warrant numbers, the texts of the motions—detailed below—indicate that both motions were attacking the warrant to search the BMW, as opposed to the warrant to place a tracking device on the BMW. Neither warrant is included in the record on appeal. As such, even though the prayer for relief in both motions indicates "Search Warrant #17998," we cannot confidently refer to the warrant at issue by that number.

¶ 5        In the first motion, defendant alleged that the warrant to search the BMW was belatedly issued after the BMW had already been searched. He asserted that an officer and his drug sniffing dog arrived on the scene after the truck driver contacted the Naperville police, but before any warrant was issued. Referencing a "supplemental [police] report," which is not

_____

[1]Masso was acquitted, and Acosta is not a party to this appeal.

included in the record on appeal, defendant stated that the dog jumped through an open window, into the BMW, and unlawfully sniffed the BMW's interior before it alerted to the presence of drugs.

¶ 6        Defendant further asserted that the four "factors" listed by Naperville police sergeant Scott Thorsen in the complaint for the warrant were "completely unsubstantiated, foundationless factual statements" that did not establish probable cause for a warrant to issue. The complaint for the warrant is not in the record, but according to defendant's motion, it set out the following four facts to show the existence of probable cause: (1) several rectangular duct-taped packages, some with unknown red writing on the outside, were in the trunk; (2) an empty gas can wrapped in a plastic bag was in the trunk of the vehicle; (3) a police dog alerted that there were narcotics in the BMW; and (4) while the registration "attached" to the BMW was to two people in Nevada, the registration "returns on a 1986 Suzuki motorcycle not a 2002 BMW 325i." Challenging these facts, defendant argued that (1) the packages were not inherently contraband by their nature or outer appearance, (2) the mere existence of a gas can does not provide reasonable suspicion or probable cause, (3) the dog had been trained in Michigan but was not certified in Illinois until six months after the search was executed, and (4) a "reporting officer narrative" indicated the BMW's temporary registration did not have a current record.

¶ 7        In the second motion, defendant alleged that Thorsen's complaint for a warrant to search the BMW contained "a stockpile" of false statements that merited the granting of an evidentiary hearing pursuant to *Franks*, as well as the quashing of the warrant and the suppression of all evidence obtained as a result of its execution. Among the alleged false statements were the following: (1) that the BMW was blue, when it actually was "not blue in color"; (2) that the truck driver observed the packages upon opening the trunk, when the packages were actually located under the subflooring of the trunk and under a spare tire; (3) that there was an empty gas can wrapped in a plastic bag on top of the packages, when no gas can was actually located within the BMW; (4) that the drug-sniffing dog was certified in Illinois, when, in fact, it was not certified until six months after the search; (5) that the dog alerted "on the vehicle," when it actually alerted only after it was allowed to make a warrantless entry within the BMW; and (6) that the registration "attached" to the BMW "returns on a 1986 Suzuki Motorcycle," when in fact, the BMW had a temporary license plate and was not yet registered.

¶ 8        In addition to defendant's two motions attacking the warrant to search the BMW, it appears from the transcripts of proceedings that two similar, if not identical, motions were filed by counsel for codefendant Marcella Acosta. Defendant's counsel stated on the record at various scheduling hearings that Acosta's counsel was "filing a motion for [a] *Franks* hearing," that "[w]e also have a four corners motion," and that defendant was adopting Acosta's "motion attacking the search warrant." At one of the scheduling hearings, the trial court asked, "This is the same motion, right, for both defendants?" Codefendant's counsel answered, "Yes, [Y]our Honor."

¶ 9        At a May 26, 2016, hearing at which the court addressed scheduling issues on defendant's and codefendant's motions, the court stated, "This is a legal argument, so we are not talking about evidentiary hearings." Then on June 8, 2016, the court asked, "[T]his is just a legal argument, right?" Counsel for codefendant Acosta responded, "Yes, [Y]our Honor." Defendant's counsel was present and did not contest that response.

¶ 10    The main hearing on defendant and codefendant's motions took place on June 15, 2016. Counsel for Acosta took the lead and argued on behalf of both defendant and Acosta, with occasional clarifications by defendant's own counsel. The following colloquy occurred:

"[COUNSEL FOR ACOSTA]: *** [T]his is a motion to quash the search, also, alleging that there's no search warrant in existence when it was searched.

THE COURT: But this is just legal arguments? There's [*sic*] no facts in dispute? Everybody agrees as to the facts?

[COUNSEL FOR ACOSTA]: They're all written down in time—time, place, and everything.

* * *

THE COURT: Okay. Now the truck is in—it's, like, a bailsman [*sic*]. It's in the custody of a transport driver; and whoever wanted the truck transported, they agreed to—to this bailsman, to give the truck to the driver, to transport it from one place to the other?

[COUNSEL FOR ACOSTA]: Yes.

THE COURT: This is all happening on the—on the bailee's watch?

[COUNSEL FOR ACOSTA]: Correct."

Defendant's counsel voiced no disagreement with the court's contemplating the consideration of the motions on a strictly legal basis. Later at the same hearing, the court asked defendant's trial counsel if he was contending that defendant was the registered owner of the automobile. That question arose in a context which suggests that the court thought such an assertion might affect the analysis of whether defendant had some possessory interest at stake during the transport from Nevada to Chicago. Defendant's counsel responded, "I'm not agreeing with it. I represent Mr. Ortega, and I'm not agreeing with that at all." The court continued, "So, he's not the registered owner[?] So, we don't have standing, based on that theory?" Defendant's counsel answered, "As far as I am concern [*sic*]." Later in the hearing, the court again asked, to no objection by any defense counsel, "All I'm trying to decide today is, do we need an evidentiary hearing or not?"

¶ 11    Acosta's counsel asserted that the search of the BMW occurred before the warrant issued, and the State responded that that fact was in dispute. Acosta's counsel then explained the factual background in support of the motion. Counsel related that a transport truck driver was unloading another car when he discovered the battery of the BMW was dead. The driver went into the BMW's trunk and, while "dismantling" it, came across innocuous wrapped packages. About three hours later, in Naperville, the driver called the local police to report the packages, at which point "multi different counties and law enforcement agencies get involved." According to Acosta's counsel, a drug-sniffing dog uncertified in Illinois jumped into the BMW through a window that the police had opened. Acosta's counsel asserted that even though the dog was "not alerting to anything," its actions constituted a search of the BMW.

¶ 12    The court interrupted this narrative to observe that the truck driver was a bailee. Acosta's counsel agreed. Defendant's counsel did not object. The court further observed that the bailee was not objecting to the search, as he had called the police due to suspicion and concern that he might be transporting something with which he should not be involved. Further arguments ensued regarding discrepancies in the times listed on the warrant and complaint, the certification of the drug-sniffing dog, and other issues. For example, Acosta's counsel asserted

- 4 -

that the search warrant was signed by Sergeant Thorsen at 9:30 p.m. and by the judge at 9:35 p.m. and that because "the police reports" indicated the truck departed the Naperville parking lot at 8:43 p.m., the search of the BMW must have occurred prior to that time, before the warrant was issued. Acosta's counsel reasoned that even if the times listed on the warrant were an hour off due to the change from daylight saving time to standard time, as the State contended, the eight minutes between 8:35 p.m. and 8:43 p.m. would not have been enough time to search the BMW, open the packages, field test the contents, place the packages back in the BMW, and reload the BMW and other vehicles onto the truck. During this portion of the hearing, Acosta's counsel asserted that the police opened the packages in the trunk before the warrant was issued. The assistant state's attorney (ASA) disagreed, stating, "They did not, Judge."

¶ 13     The court eventually returned to the bailment issue. The court asked whose rights the police had violated, since the bailee gave the police permission to search and none of the defendants had yet taken possession of the BMW. Acosta's counsel suggested the bailor as the person whose rights were violated, but the court replied that "one person cannot assert the fourth amendment rights of another." During further discussion on the topic, Acosta's counsel explained that the agreement with the truck driver was that, when he arrived in "the Illinois area," he was to call a phone number "and discover whom they were dropping it off to and what location." Later in the hearing, the ASA explained that Acosta took the phone call and paid the driver, that all three defendants met the driver at the Home Depot, that defendant drove the BMW to Masso's house, and that Acosta and Masso followed in a Honda.

¶ 14     In response to further questions by the court challenging the defendants' standing to contest the search, Acosta's counsel, joined by defendant's counsel, answered that he was relying on "the fact that Detective Thorsen engaged in fictitious representations to the judge to get this warrant" and renewed the request for a *Franks* hearing. The ASA countered by noting that, to be granted a *Franks* hearing, the defendant would have to make a substantial preliminary showing, and "there may need to be affidavits, sworn documents, something." In response, the court stated, "Well, the sworn documents would be the police reports; and I—I haven't read these reports. I trust what I'm being told in good faith what the reports say." The State agreed that the police did not have a warrant to go inside the garage and search the BMW but characterized it as "a trial issue." The State further noted that defendant and codefendant were seeking a *Franks* hearing regarding false statements used to secure the warrant for the initial search rather than for the later garage search.

¶ 15     No witnesses testified and no documents were admitted into evidence at the hearing on these motions. Defendant's presentation consisted entirely of his written motions and arguments of both defense counsel. The court appears to have had the complaint for warrant, the warrant, the police reports, and the automobile registration records before it, but these documents are not included in the record on appeal. At no time during the hearing did defendant's counsel express disagreement with the court's approach, that is, taking the facts in the motions, and as asserted by the attorneys for both defendants, as true and determining whether an evidentiary hearing would be required to resolve either motion.

¶ 16     The court explained its decision as follows:

"All right. I'm ready to—we have some factual disputes here. We have some facts that are not in dispute, as well.

And based on the facts that are not in dispute, this case is riveted [*sic*] with probable cause. There's a bailor from some other state, that is not asserting any rights here. The truck driver is a bailee, that has possession of the car. He sees something. He comes across something, not at the direction of the police, but on his own, as part of his responsibility as a—carthage [*sic*] man.

It alarms him. He calls the police. They make observations. The dog comes. There is a search warrant that is secured at one point, although there's some questions about that warrant.

In any event, all they have is a phone number. They have a tracking device on the car. They have a search warrant. They follow the car. The car is dropped off, and it ends up in a garage, and the garage is closed, and then they open the garage.

And the question is whether [defendant] and Miss Acosta had some standing to complain about how they got into the garage?

And that's where the actual seizure happened, where the police took it, the stuff that they inventoried it.

\*\*\*

Okay. All right. I don't find any problem with the initial search. I don't find any problem with the dog, because this all happened while the bailee had the car.

There's [*sic*] no fourth amendment rights that the defendants can possibly assert at that point; and the bailor is not asserting any such rights. We don't even know who that person may be.

The only rights which they could possibly assert, is if they say they had standing, because they have some nexus to the residence, where this garage is; and the police got into the garage, and opened the door, somehow in violation of the law, that would be the only possible scenario, where they could have any relief under the fourth amendment. So, we can have a motion about that.

\*\*\*

About opening the garage, and what probable cause they had or didn't have, or how they got into the garage, because going into a residence is a little different than having a bailee tell you, I'm worried about what's in my—in this car."

¶ 17 The court spoke with the parties about scheduling a hearing on a different motion specifically challenging the search of the BMW in the garage and then stated as follows:

"There's not going to be any *Franks* [hearing]. I don't see any reckless disregard of the truth or purposeful lies that caused the warrant to be issued, that wouldn't have been issued. Otherwise, I don't believe—not even so sure they needed a warrant under the scenario I've been listening to today; but a judge signed it; and it's more, like, just to be careful after the fact."

At the conclusion of the hearing, the court stated that the motion to quash the search warrant and the motion for a *Franks* hearing were denied.

¶ 18 Defendant filed two other pretrial motions. One, a "Motion to Suppress Statements," challenged an inculpatory statement defendant made in a police car following his arrest, on the basis that it was coerced. The second, a "Motion to Quash Arrest and Suppress Evidence," challenged the search of the BMW in Masso's garage. On June 26, 2016, during the hearing on that motion, the court referred back to the June 15, 2016, hearing on the motions that are

the subject of this appeal and stated, "It wasn't an evidentiary hearing *per se*, but we did hash through facts and both sides agree as to what certain facts are, and that's how we got to this stage now." The court denied both of these other motions following hearings.

¶ 19　　During the trial, the court asked if the parties wanted to incorporate by reference "what I heard in the motion to suppress." Defendant's counsel responded, "Yes, Your Honor." Later in the trial, the court admonished the parties that it was incorporating by reference everything it had heard at the various suppression hearings, noting that the hearing where defendant requested a *Franks* hearing in particular "was not an evidentiary hearing because there were facts that were not in dispute." Again, defendant's counsel responded, "No objection."

¶ 20　　At trial, the State presented evidence that defendant, Acosta, and Masso arrived together at the Home Depot parking lot in a Honda. After Acosta paid the truck driver, defendant entered the BMW and drove it to Masso's house, while Acosta and Masso followed in the Honda. Defendant drove the BMW into the detached garage and closed the garage door. He then got into the Honda with Acosta and Masso, and the Honda drove away. A few minutes later, the Honda returned to the alley and parked, and the garage door opened. Defendant and Acosta got out of the Honda and entered the garage. While the garage door was open, police observed defendant taking bundles from the BMW's trunk and placing them into a bag Acosta was holding. An officer called for an arrest. As he and other officers approached, yelling "police," the garage door closed. Several officers approached Masso in the Honda with their guns drawn, but then holstered their weapons. An officer obtained Masso's permission to use her garage door opener. When he opened the garage door, defendant and Acosta were still inside. They were ordered at gunpoint to get on the ground and were subsequently arrested. Defendant made an inculpatory statement after his arrest, indicating that he purchased "a car" in Nevada, "made a determination that he was going to obtain cannabis to put in that car and ship it to Illinois," used a fictitious name and address to make the arrangements to transport the car, and then gave possession of the car to a friend, who met with a transport driver, who then loaded the car onto a truck. Masso provided consent to search her basement. Multiple items of drug paraphernalia—including glass pipes, a grinder, digital scales, a vacuum sealer, bags, bags containing cannabis, and money—were recovered from the basement. The 24 packages recovered from the garage tested positive for 5113.8 grams of cannabis.

¶ 21　　The circuit court found defendant guilty of the lesser-included offense of possession of over 5000 grams of cannabis and sentenced him to four years in prison.

## II. ANALYSIS

¶ 23　　On appeal, defendant contends that he received ineffective assistance of trial counsel at the hearing on the motions to quash the search warrant and grant a *Franks* hearing. He argues that counsel was ineffective for failing to present evidence where "there were facts in dispute" and claims that if counsel had presented evidence, it would have led both to a successful motion to quash the warrant and to a substantial preliminary showing in support of granting a *Franks* hearing. The facts in dispute, according to defendant's argument in his brief, were whether the search of the BMW was done before the warrant was issued, whether the packages in the trunk were opened before the warrant was issued, what time the search occurred, and whether various details listed in the complaint for warrant were deliberate misrepresentations. Defendant maintains that without evidence—rather than merely argument—on these issues, the court could not determine whether a fourth amendment violation occurred. The evidence defendant

suggests could have been presented includes sworn affidavits addressing the time the warrant was issued, the time the BMW was searched, and the time the packages were opened. At oral argument before this court, defendant conceded that as a bailee, the truck driver had authority to allow the police to search the BMW. However, he maintained that this authority did not extend to allowing the police to open the sealed packages found in the trunk and asserted that a valid warrant was required to be in effect before the police could do so.

¶ 24 In reviewing claims of ineffective assistance of counsel, appellate courts "use a bifurcated standard of review, wherein we defer to the trial court's findings of fact unless they are against the manifest weight of the evidence, but make a *de novo* assessment of the ultimate legal issue of whether counsel's actions support an ineffective assistance claim." *People v. Nowicki*, 385 Ill. App. 3d 53, 81 (2008). In this case, where defendant is not challenging any findings of fact made by the trial court, but rather, is arguing that the trial court should have been presented with evidence to be used in resolving factual disputes, we consider *de novo* whether defendant has stated a claim for ineffective assistance of counsel.

¶ 25 To establish ineffective assistance of counsel, a defendant must show (1) that his counsel's representation fell below an objective standard of reasonableness and (2) but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *People v. Griffin*, 148 Ill. 2d 45, 57 (1992).

¶ 26 The record reveals that the trial court, with the full acquiescence of all defense counsel, considered both motions in a preliminary manner to determine whether an evidentiary hearing was actually needed. In doing so, it approached the allegations in the motions from a strictly legal perspective. As shown above, the trial court repeatedly verified that was how it was considering the motions, and no defendant's counsel ever objected or argued to the contrary. No defendant disputed the basic facts regarding the bailment of the automobile. Once the court determined that the defendant did not have standing to challenge the search of the BMW because the bailee gave permission for the search, it essentially concluded its analysis.

¶ 27 But defendant observes on appeal that, when the trial court ruled that the bailment was dispositive, it "skirt[ed] the issue of the warrant." Like defendant, we believe the trial court's analysis was incomplete. A bailment is "the rightful possession of goods by one who is not an owner. The characteristics common to every bailment are the intent to create a bailment, delivery of possession of the bailed items, and the acceptance of the items by the bailee." *Berglund v. Roosevelt University*, 18 Ill. App. 3d 842, 844 (1974) (citing *Wall v. Airport Parking Co. of Chicago*, 88 Ill. App. 2d 108 (1967)). Here, there is no dispute that an unknown person delivered possession of the BMW to an unknown transportation agent in Nevada for the purpose of delivering the automobile to Chicago, thus establishing a bailment. There is also no dispute, given defendant's rightful concession at oral arguments in this court, that this bailment led to the truck driver having apparent authority to allow the police to search the BMW. See *United States v. Crowder*, 588 F.3d 929, 935-36 (7th Cir. 2009) (where truck driver was transporting car, "no one could have a reasonable expectation of privacy in [the car's] contents," and truck driver had apparent authority to allow police to search the car); *United States v. Covarrubias*, 847 F.3d 556, 558 (7th Cir. 2017) (*per curiam*) (where transport truck driver had control of and access to car, the car's recipient had no reasonable expectation of privacy in its contents).

¶ 28    However, we cannot find that just because the truck driver had apparent authority to allow a search of the BMW, he also had apparent authority to allow the police to open the sealed packages in the BMW's trunk. To establish the apparent authority type of third-party consent to search a closed container, the government must show that a reasonable person, in the circumstances presented to the government agent, would reasonably believe that the third party had authority over the container. *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000). Mere possession of a closed container by a third party does not automatically give rise to a finding of apparent authority to consent to a search of its contents. *Id.* Rather, apparent authority depends on the third party's use of, control over, and access to the container. *Id.* Here, the truck driver was empowered to enter the BMW, drive it off the transport truck, and open the trunk to access the battery. Thus, he had apparent authority over the BMW and could consent to the search of its interior. See *Covarrubias*, 847 F.3d at 558; *Crowder*, 588 F.3d at 935-36. But none of these circumstances would give rise to a reasonable belief that the truck driver also had authority over the sealed packages in the BMW's trunk. See *People v. James*, 163 Ill. 2d 302, 315-16, 319 (1994) (where there was no question that person with apparent authority over vehicle did not own, control, or have common possession of closed container located within that vehicle, that person did not have apparent authority to consent to search of that container).

¶ 29    With regard to government searches of closed containers, the United States Supreme Court has explained:

> "[S]ealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable. Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package." *United States v. Jacobsen*, 466 U.S. 109, 114 (1984).

Here, the truck driver lacked apparent authority over the sealed packages and, therefore, could not consent to a police search of their contents. Pursuant to *Jacobsen*, a warrant was required. See *id.*

¶ 30    We are mindful that the United States Supreme Court has held, as an extension of the exception to the search warrant requirement for moving vehicles, that the police may search a container or package found in an automobile without a warrant if the search of the automobile is supported by probable cause or if the police have probable cause to believe the package contains contraband or evidence. *California v. Acevedo*, 500 U.S. 565, 569, 570, 579-80 (1991) (citing *Carroll v. United States*, 267 U.S. 132, 158-59 (1925); *United States v. Ross*, 456 U.S. 798, 825 (1982)).[2] However, the trial court here did not reach the issue of whether probable cause existed. The trial court's decision to deny defendant's motions hinged solely on the apparent authority of the truck driver to consent to search the BMW, and not on a finding of probable cause. Although the trial court did comment in passing that the "case is riveted [*sic*] with probable cause," it did not expound on that statement, immediately turned to a discussion of the bailment, and concluded, "I don't find any problem with the initial search. I don't find

---

[2]After oral argument, the State filed a motion to cite additional authority. Defendant filed a response. We now grant the motion. In this paragraph, we discuss the line of authority upon which the State relies.

any problem with the dog, because this all happened while the bailee had the car." Evidence that could have supported or refuted a finding of probable cause was not introduced at the hearing on defendant's motions to quash the warrant and for a *Franks* hearing. In the absence of such evidence, we fail to see how the trial court could have made a finding regarding whether probable cause existed for the police to search the sealed packages in the BMW's trunk.

¶ 31 Questions were raised at the June 15, 2016, hearing regarding whether the police opened the sealed packages before obtaining the warrant. Acosta's counsel asserted that they had done so, while the ASA maintained they had not. Questions also existed as to the exact timing of the signing of the warrant, whether the time reflected on the warrant was incorrect due to the end of daylight savings time, and whether Sergeant Thorsen made misrepresentations regarding timing and other factors when seeking the warrant. We agree with defendant that whether a valid warrant existed at the time the packages were opened is a question the trial court could not have answered without having been presented with actual evidence, rather than just arguments made by attorneys. Similarly, to justify the granting of a *Franks* hearing, counsel needed to have presented some evidence, rather than just argument, to make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and that the allegedly false statement was necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56. For counsel to proceed with the June 15, 2016, hearing with no evidence was objectively unreasonable. Had counsel not failed in this respect, we believe there is a reasonable probability that the result of the proceeding would have been different. See *Strickland*, 466 U.S. at 687-88, 694. Defendant's counsel was ineffective for failing to present any evidence to support his motion for a *Franks* hearing.

¶ 32 We remand this matter to the trial court for the sole purpose of holding a *Franks* hearing, during which defendant may present evidence to challenge the allegations in the complaint for the search warrant, and where the court may determine the credibility of witnesses and resolve inconsistencies in the evidence. See *People v. Chambers*, 2014 IL App (1st) 120147, ¶¶ 22-23. Because the outcome of the *Franks* hearing may render moot defendant's first contention that trial counsel was ineffective for failing to present evidence in support of the motion to quash the search warrant, we decline to consider that issue at this time. If the trial court determines the warrant was not issued based on knowing, intentional, or false statements, we retain jurisdiction to address that first claim. See *id.* ¶ 23. However, if the trial court concludes at the *Franks* hearing that the search warrant should be quashed, then it should conduct a new trial. We note that double jeopardy would not bar retrial if all evidence submitted at the original trial, even that which was erroneously submitted, is sufficient to establish defendant's guilt. *Id.* (citing *People v. Olivera*, 164 Ill. 2d 382, 393 (1995)). Defendant shall file a status report with this court on before July 1, 2020.

¶ 33 As a final matter, we comment on the age of this case. The Illinois Constitution provides that "[t]he Supreme Court shall provide by rule for *expeditious* and inexpensive appeals." (Emphasis added.) Ill. Const. 1970, art. VI, § 16. The Illinois Supreme Court has fulfilled this constitutional mandate by establishing, in Illinois Supreme Court Rule 343(a) (eff. July 1, 2008), a standard briefing schedule under which cases should normally be fully briefed within 84 days from the filing of the record. That did not occur here because the parties requested, and this court granted, numerous extensions of time based on the representations of counsel that their offices were backlogged. We acknowledge that recent amendments to Illinois

Supreme Court Rule 610(b)(5) (eff. Sept. 17, 2019), regarding motions for extensions, direct that such requests must include a "realistic expectation of the length of time needed to prepare and file the brief" without reference to the usual 84-day briefing schedule. But those same amendments indicate that motions for extensions must include information showing the length of the defendant's sentence. Ill. S. Ct. R. 610(b)(4) (eff. Sept. 17, 2019). Moreover, the amendments did not change the fact that Rule 610 includes language stating that the purpose of the rule is "the achievement of prompt preparation and disposition of criminal cases in the reviewing courts, and motions for extension of time are looked upon with disfavor." Ill. S. Ct. R. 610(b) (eff. Sept. 17, 2019).

¶ 34    Here, defendant timely filed his notice of appeal on August 25, 2016. The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal on September 2, 2016; a docketing statement was filed on December 7, 2016; and a certificate in lieu of the record was filed on March 13, 2017. But OSAD did not file its brief until over 15 months later, on June 20, 2018, and the State did not file its appellee's brief until more than another year had passed, on August 7, 2019. The reply brief was filed on September 4, 2019. Viewed in light of defendant's four-year sentence, this pace is unacceptable.

¶ 35    We are aware of the heavy workload of OSAD and the State's Attorney's office, but nevertheless expect attorneys who practice in this court to keep abreast of their pending cases and proceed diligently. It has come to this court's attention that OSAD has a policy of working on its oldest cases first, rather than employing a procedure that could identify higher priority cases for immediate attention such as those with short sentences. See *People v. Cisco*, 2019 IL App (4th) 160515, ¶¶ 52, 64, 65 (Steigmann, J., specially concurring). In recognition of the maxim that "justice delayed is justice denied," we urge OSAD to institute a triage procedure wherein an experienced lawyer could review the record on appeal to determine whether the case presents any factual circumstances or legal issues that would suggest it should be given priority over older, less urgent appeals that are relatively routine or lack merit. See *id.* ¶¶ 68-70.

¶ 36    Remanded with instructions; jurisdiction retained.

¶ 37    JUSTICE ROCHFORD, specially concurring:

¶ 38    I concur in the majority's analysis and decision to remand this matter to the circuit court for a *Franks* hearing. I also fully agree that OSAD and the Office of the Cook County State's Attorney should "keep abreast of their pending cases and proceed diligently." This court has an obligation as well to ensure fair and expeditious resolution of appeals and not to delay justice. See *supra* ¶ 35. As the majority in *Cisco* stated, when considering a lengthy appeal in which the State conceded an error in sentencing, "it is incumbent on *all* parties to be diligent in their work and make every effort to avoid or limit such possible deleterious consequences." (Emphasis in original.) *Cisco*, 2019 IL App (4th) 160515, ¶ 45. I do not concur in that part of paragraph 35 of the majority opinion, in which the majority " 'urge[s]' " OSAD to use a specific method in the representation of their clients. See *supra* ¶ 35; *People v. Funches*, 2019 IL App (3d) 160644, ¶ 15 (Schmidt, P.J., specially concurring) (where the concurring justice, in discussing the *Crisco* concurrence, stated that the appellate court has "no authority to micromanage (or even 'macromanage') the Office of the State Appellate Defendant (OSAD)"). Our supreme court and OSAD have met to discuss backlogs and, as a result, Rule 610(b) was

amended (see Ill. S. Ct. R. 610(b) (eff. Sept. 17, 2019)) and a *pro bono* program has been established (see *Supreme Court Volunteer Pro Bono Program in Criminal Appeals*, Ill. Courts, http://illinoiscourts.gov/supremecourt/probono/ (last visited Mar. 27, 2020) [https://perma.cc/63QS-45CW]).