2021 IL App (2d) 190654-U
No. 2-19-0654
Order filed September 3, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-1907 |
| JOVON JOHNSON, | ) ) ) | Honorable Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Zenoff and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defense counsel's representation was not ineffective; the trial court did not abuse its discretion by denying the defendant's motion to bar evidence based on an alleged discovery violation.

¶ 2    Following a jury trial, the defendant, Jovon Johnson, was convicted of burglary (720 ILCS 5/19-1(a) (West 2014)) and was sentenced to 14 years' imprisonment.  On appeal, the defendant argues that (1) he was deprived of the effective assistance of counsel and (2) the trial court's ruling on an alleged discovery violation deprived him of a fair trial.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On November 17, 2016, the defendant was charged by indictment with burglary (720 ILCS 5/19-1(a) (West 2014)).  The charge alleged that on October 22, 2016, the defendant knowingly and without authority entered Sunmist Restaurant in Addison with the intent to commit a theft therein.

¶ 5      On November 29, 2017, defense counsel filed a motion to suppress evidence illegally seized.  The crux of the motion was that an application for a pen register on the defendant's phone made by Detective Charters Roe of the Carol Stream police department, as well as an application for an extension, lacked probable cause.[1]  In support of his application, Roe stated that the defendant and his brother, James Johnson, were suspected in over 30 commercial burglaries throughout Illinois, including for a burglary at Stella's, a gaming establishment in Westmont.  As to the burglary in Westmont, the application stated:

> "On July 19th, the Westmont Police Department responded to a burglary at Stella's Place in Westmont.  Again, the same model video gaming payout redemption terminal was targeted.  Video surveillance of the suspects matches James and Jovon Johnson."

The application for extension contained the same allegations.

¶ 6      Defense counsel argued that the allegation raised in Roe's applications could not support a finding of probable cause because Roe was unclear about when many of the burglaries occurred and Roe's assertions that he suspected the defendant in the burglaries were conclusory. The trial court found that the applications could have been more specific regarding when the alleged other

---

[1] Roe explained that a pen register is an order signed by a judge that allows a phone company to provide geographic locations of a phone number.

crimes occurred. Nonetheless, the trial court denied the motion as it found that Roe's conclusions could be taken as evidence when the warrant was viewed in its entirety.

¶ 7     On April 23, 2018, defense counsel filed a motion for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), alleging that Roe made false statements in the applications. In the application, Roe indicated that he had received surveillance video related to a burglary in Carol Stream from which Detective Roe had observed suspects he believed to be James Johnson and the defendant. However, defense counsel attached to his motion a subpoena return from the Carol Stream police department which read "No videos for this case." Based on the subpoena return, defense counsel argued that Roe made false or reckless representations in his applications that justified a *Franks* hearing. On May 23, 2018, the State informed the trial court and defense counsel that it had found the tape that was the subject of the motion.

¶ 8     On June 1, 2018, defense counsel was granted leave to withdraw as the defendant's attorney and the Du Page County Public Defender's Office was appointed to represent him.

¶ 9     On December 4, 2018, the trial court denied the defendant's motion for a *Franks* hearing.

¶ 10    On February 22, 2019, the State tendered a supplemental disclosure to the defense. Among the disclosures was a copy of a police report from Westmont.

¶ 11    Prior to trial, the State filed a motion *in limine* "to introduce defendant's other crimes and bad acts." The motion listed 17 other crimes the State attributed to the defendant and sought to admit at trial under Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011). The defendant had not been convicted of any of those crimes. Several of the other alleged crimes in the motion describe allegations that Roe made in his application and application for extension, including the burglary in Westmont. That allegation stated:

"On July 21, 2016, at approximately 3:51 AM, Officer Bennett of the Westmont Police Department was dispatched to a report of a burglary at Stella's, a gaming establishment located *** in Westmont, Illinois. Upon arrival, he observed the rear door had been forced open using a crowbar and the ATM gaming payout machine had been pried open. *** Video surveillance from Stella's showed two offenders, both wearing gloves, with hooded sweatshirts over their heads, forcing entry to the building via the rear door with crowbars[.]

¶ 12    At the hearing on the other-crimes motion, defense counsel noted that, whereas the defendant and his brother are black, employees of Stella's in Westmont who viewed the surveillance footage described the offenders as white males. The State replied that the Westmont police report of the offense confirmed that "the initial person that watched the video [wrote] in their report that upon initial view, it appears that it might be two male whites." However, the State asserted that the surveillance video recorded "in night vision" and that "dark appears light." The State explained that the surveillance video did have a "view that is in color" but "all the flashing lights are flickering on and off, which *** give[s] it the same appearance as well." Defense counsel indicated that the defense had not yet received the surveillance video of the Westmont burglary from the State.

¶ 13    The trial court denied the State's motion *in limine* to use the other crimes as evidence of *modus operandi*, finding that the alleged other crimes did not contain a "high degree of similarity of peculiar and distinctive features," and also that they lacked foundation.

¶ 14    On March 6, 2019, before trial proceedings began, the defense made an oral motion to bar the testimony of George Kotsapoukis, the owner of the Sunmist restaurant, based on the State's disclosure of information provided by Kotsapoukis to the State for the first time during the State's pre-trial discussion with him that morning. The new information included Kotsapoukis'

statements to the State that $300 was missing from the cash register and that he banks at Oxford Bank in Addison. The defense argued that the statements about $300 missing and the bank Kotsapoukis uses were late disclosures and that "[h]aving cash from a cash register in the van in question is a surprise that we were not planning on dealing with. That is new evidence. We don't want a continuance. *** So I am asking to bar just that then."

¶ 15 The State responded that the defense was previously aware that there was money found in the van and that the photographs of the money indicated that it was from an Addison bank. The State acknowledged that the disclosures were late but stressed that it was because they had just received the information that morning. The State offered to agree to a stipulation that would impeach Kotsapoukis by establishing that he told a police officer that he did not lose any money on the date of the burglary.

¶ 16 The trial court denied the motion to bar Kotsapoukis' testimony, explaining:

"I don't think it's a discovery violation. I am having trouble with your argument on that. I am having trouble distinguishing it from any time a witness says something different.

And I would, certainly, give you as much latitude, even though we were anxious to try this, I mean to get it done Thursday because of the one juror. But we do have an alternate if we had to. I would give you as much time as you needed with respect to—not a continuance, but as much time slowing down trial to investigate it.

* * *

I am going to give you great latitude on cross-examination or on bringing in people if you feel that you need to either to rebut that or to perfect impeachment, including, I guess, an offer already by the State."

¶ 17    At the close of the trial, the jury found the defendant guilty of burglary.

¶ 18    Following the denial of his motion for a new trial, the trial court conducted a sentencing hearing.  At the hearing, Roe testified that his investigation into the defendant and his brother had lasted for six months.  During those six months, he had the opportunity to observe the defendant and his brother two or three times in person and at least 50 times in photographs or on video.  Roe testified regarding the burglary at Stella's in Westmont.  Based on his numerous viewings of the surveillance video (which was also played during the sentencing hearing), Roe testified that he was able to identify the people in the video.  Roe identified the two people in the video as the defendant and his brother, although the trial court sustained the defendant's objection to Roe's identification testimony, explaining that the court had seen the video itself.

¶ 19    At the close of the sentencing hearing, the trial court sentenced the defendant to 14 years' imprisonment.  The defendant thereafter filed a timely notice of appeal.

¶ 20                                    II. ANALYSIS

¶ 21    The defendant's first contention on appeal is that he was deprived of the effective assistance of counsel.  The defendant argues that defense counsel was ineffective for failing to file a motion for a second *Franks* hearing "[w]hen the defense received the Westmont police report of the burglary at Stella's."  The defendant insists that the police report contained "new information" that the suspects were white, showing that Roe made a statement in both his initial application for a pen register and his request for an extension of the pen register that was either false or made with a reckless disregard for the truth.  The defendant therefore asserts that this court should remand to allow him to file a motion for a second *Franks* hearing.

¶ 22    To establish ineffective assistance of counsel, a defendant must show (1) that his counsel's representation fell below an objective standard of reasonableness and (2) but for counsel's errors,

there is a reasonable probability that the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *People v. Griffin*, 148 Ill. 2d 45, 57, (1992).

¶ 23     In *Franks*, the United States Supreme Court provided defendants a right under limited circumstances to a hearing that challenges the veracity of an affidavit supporting a search warrant. *People v. Voss*, 2014 IL App (1st) 122014, ¶ 16.  The purpose of a *Franks* hearing is to provide a meaningful, but limited, deterrence of and protection against perjurious warrant applications. *People v. Lucente*, 116 Ill. 2d 133, 150 (1987).  There is a presumption of validity with respect to a search warrant's supporting affidavit.  If a defendant makes a substantial preliminary showing that a false statement, necessary for the finding of probable cause, was knowingly or intentionally included in the affidavit or with reckless disregard for the truth, then the defendant will be granted an evidentiary hearing.  *Franks*, 438 U.S. at 171.

¶ 24     The defendant must meet several conditions to make a preliminary showing: (1) the defendant's attack "must be more than conclusory and must be supported by more than a mere desire to cross-examine"; (2) the defendant must provide "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof"; (3) the allegations must "point out specifically the portion of the warrant affidavit that is claimed to be false"; and (4) the defendant must furnish "[a]ffidavits or sworn or otherwise reliable statements of witnesses * * *, or their absence satisfactorily explained." *Id.*  The defendant's burden for the preliminary showing lies somewhere between mere denials and proof by a preponderance. *Lucente*, 116 Ill. 2d at 152.

¶ 25     We do not believe that the defendant can meet his burden under either prong of *Strickland* because the record does not support his assertion that Roe made a "false statement knowingly and

intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155-56. Again, the defendant claims that Roe made a false statement when he asserted that the suspect in the Westmont video matched the defendant because other people who looked at the video stated that the suspect was white, which the defendant is not. The State provided a reason for this apparent inconsistency when it explained at the hearing on its motion *in limine* that colors did not appear as they were.

¶ 26    Most significantly, the Westmont surveillance video at issue was played at the defendant's sentencing hearing. The video demonstrates that Roe had ample opportunity to view the faces of the individuals in the video surveillance footage. Roe testified at the sentencing hearing that he had seen the defendant in person two or three times previously and over 50 times in video. He also testified that he had reviewed the video of the burglary at Stella's on numerous occasions. His testimony shows that his statement in the pen register application that the video surveillance matched the defendant was thus neither knowingly false nor made with a reckless disregard for the truth. The fact that someone else viewed the video and believed that the suspect was white (and thus could not have been the defendant) does not support a conclusion that Roe's statement was either false or reckless. Accordingly, defense counsel's motion for a second *Franks* hearing as to whether Roe knowingly made false or reckless statements in the pen application would have been futile. We thus conclude that defense counsel's failure to file such a motion did not constitute ineffective assistance of counsel. See *People v. Holmes*, 397 Ill. App. 3d 737, 741 (2010) (the failure to file a motion does not establish deficient representation when the motion would have been futile).

¶ 27    In so ruling, we note that, in support of his argument, the defendant relies on *People v. Ortega*, 2020 IL App (1st) 162516. In that case, the defendant filed a motion for a *Franks* hearing,

asserting that a police officer had obtained a search warrant based on false statements. *Ortega*, 2020 IL App (1st) 162516, ¶ 7. The trial court subsequently denied the defendant any relief under *Franks* based solely on the parties' legal arguments. *Id.* ¶ 10. Following a bench trial, the defendant was convicted of possession of cannabis. *Id.* ¶ 21. On appeal, the reviewing court held that defense counsel was ineffective for not presenting any evidence in support of his *Franks* motion. *Id.* ¶ 31. The reviewing court explained that had defense counsel not failed in this respect, there was a reasonable probability that the result of the proceedings would have been different. *Id.* The reviewing court therefore remanded for an evidentiary hearing under *Franks*. *Id.* ¶ 32.

¶ 28    *Ortega* is distinguishable because there defense counsel was ineffective for not submitting any evidence in support of a potentially meritorious *Franks* motion. Here, defense counsel's alleged ineffectiveness was his failure to file a second *Franks* motion. As discussed above, defense counsel's failure to file a second *Franks* motion did not constitute ineffective assistance of counsel when that motion would have been futile. See *Holmes*, 397 Ill. App. 3d at 741.

¶ 29    The defendant's second contention on appeal is that the trial court abused its discretion when it denied his oral motion to exclude certain testimony from Kotsapoukis. The defendant made his motion after the State notified him one day into the trial that Kotsapoukis would testify that $300 was taken from his cash register and that Kotsapoukis banked at Oxford Bank in Addison. Kotsapoukis had originally told the police that nothing had been taken from his restaurant. The defendant claims that Kotsapoukis' new statements surprised and prejudiced him because he was unable to investigate them or effectively alter his trial strategy since the trial had already begun. The defendant insists that the trial court's decision not to bar Kotsapoukis' new statements deprived him of a fair trial.

¶ 30    Supreme Court Rules 412 (eff. Mar. 1, 2001) and 415(b) (eff. Oct. 23, 2020) require that the State produce all written or recorded statements of its witnesses and that it supplement this production with any additional material acquired after discovery has been conducted. *People v. Young*, 263 Ill. App. 3d 627, 633 (1994). Once a court finds a discovery violation it may order further discovery, grant a continuance, exclude the evidence, or impose any sanction which it finds appropriate under the circumstances. *People v. Harris*, 259 Ill. App. 3d 106, 109 (1994). The preferred sanction is a recess or a continuance if either would protect the defendant from surprise or prejudice. *People v. Aguilar*, 218 Ill. App. 3d 1, 9 (1991). A defendant cannot persuasively claim prejudice if he does not request a continuance to investigate the alleged surprise statement, but instead proceeds with the trial. *Young*, 263 Ill. App. 3d at 633. The trial court's ruling on the appropriate sanction for a discovery violation will not be disturbed absent an abuse of discretion. *Id.*

¶ 31    Here, on the second day of trial, the State disclosed that it had just learned that Kotsapoukis would testify that $300 was taken from his cash register and that Kotsapoukis banked at Oxford Bank in Addison. (Money with Oxford Bank markings had been found in the defendant's vehicle). In response to this disclosure, defense counsel asserted that Kotsapoukis' testimony was new evidence that "is a surprise that we were not planning on dealing with." He twice indicated, however, that the defense did not want a continuance and just wanted the evidence barred instead. In denying the defendant's request to bar the evidence, the trial court indicated that it would give the defendant "as much time as you needed with respect to—not a continuance, but as much time slowing down the trial to investigate it." Further, the trial court indicated that it would give the defendant "great latitude on cross-examination" to perfect its impeachment of Kotsapoukis.

¶ 32    We do not believe that the trial court abused its discretion in not barring Kotsapoukis from testifying that money had been stolen from his cash register and that he banked at Oxford Bank. As noted above, the preferred remedy for a discovery violation is a recess or a continuance. *Aguilar*, 218 Ill. App. 3d at 9.  The defendant, however, repeatedly rejected that potential remedy when it told the trial court that he did not want a continuance.  His refusal to accept that remedy now prevents him from arguing that he was prejudiced by the trial court's decision.  *Young*, 263 Ill. App. 3d at 633.

¶ 33    The defendant insists that *Young* is distinguishable because there the late disclosures did not affect the defendant's trial strategy.  That may be, but we do not believe that this advances the defendant's argument that the trial court's only option was to bar Kotsapoukis from testifying differently from his previously disclosed statements.  Rather, we believe the remedy the trial court crafted—to allow the defendant additional time to investigate the new claims and to have wide latitude in cross-examining Kotsapoukis—gave defense counsel ample opportunity to adjust his trial strategy to conform to Kotsapoukis' new testimony.

¶ 34                                III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 36    Affirmed.